[No. B237335. Second Dist., Div. Eight. Jan. 15, 2013.]

SUSANNE WHATLEY-MILLER et al., Plaintiffs and Respondents, v. COLLIN COOPER, Defendant and Appellant.

COUNSEL

McCurdy & Leibl, John D. McCurdy and Lee M. Moulin for Defendant and Appellant.

Thon Beck Vanni Callahan & Powell, Daniel P. Powell; Esner, Chang & Boyer, Stuart B. Esner and Andrew N. Chang for Plaintiffs and Respondents.

OPINION

FLIER, J.—Thomas Miller died on December 8, 2006. On February 22, 2008, his widow, Susanne Whatley-Miller, and his two daughters, Holly Elizabeth Miller and April Ann Miller (collectively, plaintiffs), filed a complaint for medical negligence and wrongful death against Michael A. Stark, M.D., Collin Cooper, M.D., and Verdugo Hills Hospital. Plaintiffs dismissed the hospital defendant with prejudice prior to trial. In the first trial, the jury returned a verdict in favor of Dr. Stark but was unable to reach a verdict as to Dr. Cooper.

In a second trial, the jury returned a verdict for plaintiffs and against Dr. Cooper. The trial court reduced the award of noneconomic damages to the mandatory statutory amount of $250,000 and entered judgment for plaintiffs in the total amount of $1,437,276, consisting of $1,187,276 in economic damages and $250,000 in noneconomic damages. The trial court later entered a conditional order granting Dr. Cooper's new trial motion on damages unless plaintiffs agreed to the reduction of the economic damages awarded by $238,369, namely, to a revised total award of economic damages in the amount of $948,907. On August 8, 2011, plaintiffs agreed and accepted the remittitur. On September 9, 2011, an amended judgment based on this acceptance was filed.

On appeal from the amended judgment, Dr. Cooper challenges the ruling of the trial court that plaintiffs' offer to compromise (Code Civ. Proc., § 998 (section 998)) was valid and made in good faith, which was the basis for the awards of expert fees as costs and prejudgment interest. He also contends the expert fees awarded were not necessary or reasonable.

We find Dr. Cooper's contentions to be unmeritorious and affirm the judgment. Initially, we conclude the acceptance requirements of section 998 were met by plaintiffs' document entitled "Acceptance of Plaintiffs' Offer to Compromise Pursuant to [Section] 998 and Civil Code [Section] 3291," which directed the clerk to enter judgment "pursuant to Plaintiffs' Offer to

Compromise which is attached hereto" and contained a place for the signature of Dr. Cooper's counsel. Moreover, the clear recital of the offer that each party was "to bear its own costs" was not rendered ambiguous by the acceptance document language that "[c]osts [are] to be submitted pursuant to cost bill filed by plaintiff(s)," which language is simply surplusage.

Additionally, the trial court did not abuse its discretion in rejecting Dr. Cooper's claim that the offer to compromise was made in bad faith, and thus, invalid. Prior to expiration of the offer, Dr. Cooper did not advise plaintiffs that, in order to evaluate their offer, he needed additional, particular information or more time. Dr. Cooper also has failed to carry his burden to demonstrate the expert fees awarded are unnecessary or unreasonable.

## BACKGROUND[1]

On June 20, 2008, plaintiffs served Dr. Cooper with an offer to compromise pursuant to section 998. In the offer, plaintiffs agreed to resolve all claims in the complaint against Dr. Cooper in consideration of $950,000 from him and that "[e]ach side [was] to bear its own costs." They advised that if this offer were "not accepted prior to trial or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn" and that pursuant to Civil Code section 3291, a judgment in favor of plaintiffs more favorable than this offer "shall bear interest at the legal rate of 10% per annum calculated from the date of plaintiffs' offer."

At the same time, plaintiffs also served Dr. Cooper with a document entitled "Acceptance of Plaintiffs' Offer to Compromise Pursuant to [Section] 998 and Civil Code [Section] 3291," which provided: "The Clerk of the Court is hereby authorized and directed to enter Judgment against [Dr. Cooper] on the Complaint of Plaintiffs . . . in the amount of NINE HUNDRED FIFTY THOUSAND DOLLARS ($950,000.00) pursuant to Plaintiffs' Offer to Compromise which is attached hereto. Costs to be submitted pursuant to cost bill filed by plaintiff[s] within ten (10) days after entry of said Judgment." Under this recital is a place for the signature of Dr. Cooper's attorney and the date of signing.

---

[1] The record does not contain a reporter's transcript of the evidence, e.g., expert witness testimony, presented at trial. We therefore are unable to verify the "facts" pertaining to decedent and the events preceding and the cause of his death recited in Dr. Cooper's opening brief. (See, e.g., *Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 348 [136 Cal.Rptr.3d 832] [duty of appellant to provide adequate record]; *Protect Our Water v. County of Merced* (2003) 110 Cal.App.4th 362, 364 [1 Cal.Rptr.3d 726] [if not in record, "it did not happen," and thus, complete record necessary]; *Bernard v. Hartford Fire Ins. Co.* (1991) 226 Cal.App.3d 1203, 1205 [277 Cal.Rptr. 401] [duty to provide page citations to record]; *Cosenza v. Kramer* (1984) 152 Cal.App.3d 1100, 1102 [200 Cal.Rptr. 18] [evidence conclusively presumed to support judgment when inadequate record].)

On April 22, 2011, plaintiffs' attorney filed a memorandum of costs in the total amount of $530,315.99, of which $108,191 was listed in item 8.b as expert fees and $411,100.31 was listed in item 13 as prejudgment interest from June 20, 2008, the date of the compromise offer, through April 29, 2011.[2]

On May 11, 2011, Dr. Cooper filed a motion to strike and tax costs (motion to tax) associated with, among other items, the unaccepted compromise offer, i.e., prejudgment interest and the expert fees. He contended "[p]laintiffs' [section] 998 offer was extinguished as a result of the first trial" and the offer "was not made in good faith." He also challenged the expert fees, because "[n]one of the experts were court-ordered." He argued that "[i]f the court [were] inclined to allow expert witness costs, the costs . . . should be taxed."

On May 24, 2011, plaintiffs served Dr. Cooper with opposition to the motion to tax.

On June 3, 2011, Dr. Cooper filed a reply to the opposition.

On June 27, 2011, Dr. Cooper filed a supplemental brief in support of his motion to tax in which he argued the compromise offer did not meet the procedural requirements of section 998, including the proper acceptance form.

In further opposition filed July 11, 2011, plaintiffs pointed out their compromise offer included a separate "acceptance" document that set forth a place for defendant's counsel to sign in order to accept the offer.

On July 22, 2011, at the hearing, after noting plaintiffs did not use the Judicial Council acceptance form, the trial court concluded that plaintiffs' acceptance document was "the functional equivalent for that, [because plaintiffs put the] acceptance in the same envelop[e]" as the offer.

When Dr. Cooper's attorney pointed out the offer was made "two months after the complaint was filed," the court stated "that's a bad faith issue" and

---

[2] On May 18, 2011, plaintiffs served Dr. Cooper with an amended memorandum of costs dated May 12, 2011, which increased the amount of the costs sought, including the costs associated with the compromise offer for prejudgment interest from $411,100.31 upward to $423,701.09 to account for interest through May 31, 2011, and for additional expert witness fees from $108,191 upward to $108,691. The $500 increase in expert witness fees is attributed to Robert Kahn, M.D. The copy of the amended memorandum of costs in the appellant's appendix does not reflect this document was filed. Both the reporter's transcript of the motion to tax costs hearing and the clerk's transcript reveal the trial court ruled on the motion to tax only as to the amounts in the original memorandum of costs.

noted he "didn't ask for more time. There's no evidence of that." The court found it was not in bad faith.

On July 28, 2011, the trial court issued its written ruling on the motion to tax costs. In relevant part, the court denied Dr. Cooper's request to tax any amount from items 8 and 13 of the memorandum of costs, respectively, $108,191 for expert witness fees and $411,100.31 for prejudgment interest. In rejecting the procedural attack on the compromise offer, the court found plaintiffs' "offer (i.e., both sets of papers in the same envelope) did contain a writing indicating the manner of acceptance, i.e., the acceptance papers themselves." The court rejected Dr. Cooper's argument that the first trial extinguished plaintiffs' offer to compromise because "the declaration of mistrial [as to Dr.] Cooper . . . is the same as if there had been no trial [as to him.]"

The court did not find persuasive his contention that the offer to compromise was not in good faith for the reason it was made only two months after he had responded to the complaint, and thus, before he had an opportunity to discover and assess the facts underlying the complaint. Relying on the uncontroverted averments in the declaration of Daniel P. Powell, plaintiffs' attorney, in opposition to the motion to tax, the trial court found that in light of the decedent's "income, the losses accompanying his wrongful death, and the $1,000,000 limit of [Dr. Cooper's] insurance policy, the Plaintiffs' offer of $950,000 was reasonable." As for what Dr. Cooper knew or reasonably should have known at the time of the offer, the court found that through discovery responses he was aware of the decedent's income and the financial impacts of his death as of "9 days before the Plaintiffs served their offer to compromise . . . on June 20, 2008. [Dr. Cooper therefore] should have known . . . that the plaintiffs' offer was within his insurance policy limits [and] a reasonable offer."

Regarding the amounts charged by plaintiffs' experts, the trial court found no basis for reducing these amounts. The court specifically found "the Plaintiffs have offered the bills to support the amounts requested" and Dr. Cooper "has offered no facts to demonstrate that the amounts were unnecessary or unreasonable."

## DISCUSSION

### 1. *Offer to Compromise Not Procedurally Infirm*

Dr. Cooper contends plaintiffs' offer to compromise both failed to comply with procedural aspects of section 998, specifically the acceptance requirements, and was ambiguous and that these defects rendered the offer invalid. We disagree.

■ The California Judicial Council has made available a form setting forth the elements of an offer to compromise and an acceptance under section 998. (See Judicial Council Forms, form CIV-090.) Although the use of this form may be a convenience for litigants, we conclude that a plain reading of the language of section 998 makes it clear this form is not the one and only way to comply with the offer and acceptance requirements of that statute.

■ Pursuant to section 998, subdivision (b), in effect at the time of plaintiffs' offer of compromise, an offer to compromise within the meaning of that statute "shall include a statement of the offer, containing the terms and conditions of the judgment or award, and a provision that allows the accepting party to indicate acceptance of the offer by signing a statement that the offer is accepted. Any acceptance of the offer, *whether made on the document containing the offer or on a separate document of acceptance*, shall be in writing and shall be signed by counsel for the accepting party or, if not represented by counsel, by the accepting party."[3] (Italics added.) Moreover, "[i]f the offer is accepted, the offer with proof of acceptance shall be filed and the clerk or the judge shall enter judgment accordingly." (§ 998, subd. (b)(1).)

Compliance with the procedural aspects of section 998 therefore may be satisfied by an offer of compromise that is comprised of a statement of the offer and a separate document of acceptance that is to be signed by counsel for the accepting party, or the accepting party if not represented. (§ 998, subd. (b)(1).) Section 998 does not specify that the acceptance must contain any specific words or that it be made in a particular manner, other than it be in writing and signed by the appropriate person.

■ Contrary to Dr. Cooper's claim, plaintiffs' offer of compromise is not defective although the provision for its acceptance was not set forth in the offer itself. Section 998 expressly allows the requisite acceptance to be "made on the document containing the offer *or on a separate document of acceptance*" so long as the acceptance is "in writing" and "signed by counsel for the accepting party" when, as here, the accepting party is represented by counsel. (Italics added.)

Dr. Cooper's reliance on *Puerta v. Torres* (2011) 195 Cal.App.4th 1267 [124 Cal.Rptr.3d 922] is misplaced. In that case, the appellate court noted: "It is undisputed from the record that Torres's offer to compromise did not include any provision regarding acceptance; it simply offered a waiver of costs in exchange for dismissal, and stated the offer would remain open for 30 days."

---

[3] Effective January 1, 2006, the Legislature amended section 998 with the above language regarding the requirements of a provision for acceptance of the offer and the manner in which the acceptance is to be made. (Stats. 2005, ch. 706, § 13, p. 5651.) Dr. Cooper was served with plaintiffs' offer of compromise on June 20, 2008.

(*Id.* at p. 1271.) It was in this context that the *Puerta* court concluded: "The offer at issue here contained nothing regarding acceptance, only the terms of the offer itself and its expiration date. It was therefore invalid under the plain language of the statute, regardless of whether Puerta ever intended to accept the offer or not." (*Id.* at p. 1273.)

These are not our facts.[4] As drafted and served on Dr. Cooper, plaintiffs' section 998 offer to compromise did not consist of a single document that did not make any mention of acceptance and failed to specify the manner in which acceptance had to be effectuated. Rather, this offer integrated two documents to form a whole, i.e., a combined offer and acceptance proposal. One document set forth the terms of the offer. The other was entitled, in pertinent part, "Acceptance of Plaintiffs' Offer to Compromise Pursuant to [Section] 998 . . ."; directed the clerk of the superior court to enter judgment "pursuant to Plaintiffs' Offer to Compromise which is attached hereto"; and contained a place for the signature of Dr. Cooper's counsel. Both documents were served on Dr. Cooper in the same envelope. Under these circumstances, the requirement of section 998 regarding the provision for acceptance of the offer in a signed writing by the accepting party's attorney has been met.

We also are not persuaded that the language about costs in the acceptance document created a fatal ambiguity as to the precise terms of the offer and acceptance. Both the offer and acceptance documents refer to the same sum, $950,000, as the amount Dr. Cooper would be required to pay plaintiffs to resolve their claims in the complaint against him. On the subject of costs, the offer document expressly stated: "Each side [is] to bear its own costs." The significance of this recital is clear: Dr. Cooper would not be liable to plaintiffs for their costs. This clarity of meaning is not transformed into an ambiguity by the recital in the acceptance document: "Costs to be submitted pursuant to cost bill filed by plaintiff[s] within ten (10) days after entry of said Judgment." This latter recital has no force or effect and is simply surplusage.

A plain reading of the acceptance document reveals this to be the case. The acceptance document did not require Dr. Cooper to pay plaintiffs' costs, nor did it direct the entry of costs against Dr. Cooper in the judgment. This document provided: "The Clerk of the Court is . . . directed to enter Judgment against [Dr. Cooper] on the Complaint of Plaintiffs . . . in the amount of NINE HUNDRED FIFTY THOUSAND DOLLARS ($950,000.00)

---

[4] For the first time, at oral argument, counsel for Dr. Cooper cited *Perez v. Torres* (2012) 206 Cal.App.4th 418 [141 Cal.Rptr.3d 758] as further support. His reliance on this authority also is misplaced. As in *Puerta*, the section 998 compromise offer in *Perez* did not include a provision that allowed the accepting party to indicate acceptance of the offer by signing a statement that the offer was accepted. (*Perez*, at p. 422.)

*pursuant to Plaintiffs' Offer to Compromise* which is attached hereto."[5] (Italics added.) As discussed above, this offer specifically and expressly provided: "Each side [is] to bear its own costs."

### 2. Offer to Compromise Not Made in Bad Faith

Dr. Cooper contends plaintiffs' section 998 offer to compromise is invalid because it was not made in good faith in that plaintiffs served their responses to his discovery requests "only two weeks before serving their Offer"; they did not respond to his request for additional discovery; and their statement of damages failed to provide information for evaluation of the case. His contention is not meritorious.

■ "The purpose of section 998 is to encourage the settlement of litigation without trial. [Citation.] To effectuate the purpose of the statute, a section 998 offer must be made in good faith to be valid. [Citation.] Good faith requires that the pretrial offer of settlement be 'realistically reasonable under the circumstances of the particular case. . . .' [Citation.] The offer 'must carry with it some reasonable prospect of acceptance. [Citation.]' [Citation.]" (*Jones v. Dumrichob* (1998) 63 Cal.App.4th 1258, 1262 [74 Cal.Rptr.2d 607].)

■ Whether the offer is reasonable "depends upon the information available to the parties as of the date the offer was served." (*Westamerica Bank v. MBG Industries, Inc.* (2007) 158 Cal.App.4th 109, 130 [70 Cal.Rptr.3d 125].) Reasonableness generally "is measured, first, by determining whether the offer represents a reasonable prediction of the amount of money, if any, defendant would have to pay plaintiff following a trial, discounted by an appropriate factor for receipt of money by plaintiff before trial, all premised upon information that was known or reasonably should have been known to the defendant," and "[i]f an experienced attorney or judge, standing in defendant's shoes, would place the prediction within a range of reasonably possible results, the prediction is reasonable." (*Elrod v. Oregon Cummins Diesel, Inc.* (1987) 195 Cal.App.3d 692, 699 [241 Cal.Rptr. 108], italics & fn. omitted.)

---

[5] No confusion arose because the offer was not actually attached to the acceptance document. The offer was in the same envelope as the acceptance document. We do not elevate form over substance. (*Elser v. Gill Net Number One* (1966) 246 Cal.App.2d 30, 31, fn. 2 [54 Cal.Rptr. 568] ["In determining rights and obligations, substance prevails over form . . . ."].)

"If the offer is found reasonable by the first test, it must then satisfy a second test: whether [plaintiff's] information was known or reasonably should have been known to [defendant]. This second test is necessary because the section 998 mechanism works only where the offeree has reason to know the offer is a reasonable one. If the offeree has no reason to know the offer is reasonable, then the offeree cannot be expected to accept the offer." (*Elrod v. Oregon Cummins Diesel, Inc., supra*, 195 Cal.App.3d at p. 699.)

"In construing section 998, we review the trial court's decision de novo. [Citation.] With respect to the validity, or reasonableness, of a section 998 offer, we review the trial court's determination for an abuse of discretion. [Citation.]" (*Mesa Forest Products, Inc. v. St. Paul Mercury Ins. Co.* (1999) 73 Cal.App.4th 324, 329 [86 Cal.Rptr.2d 398].) We "will examine the circumstances of the case to determine if the trial court abused its discretion." (*Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 152 [118 Cal.Rptr.2d 569].) An abuse exists only when the trial court exercised its broad discretion in a manner that is arbitrary, capricious or patently absurd and which resulted in a manifest miscarriage of justice. (*Culbertson v. R. D. Werner Co., Inc.* (1987) 190 Cal.App.3d 704, 710 [235 Cal.Rptr. 510].)

" ' ["]The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power." [Citations.]' " (*Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 136 [84 Cal.Rptr.2d 753], quoting *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193].)

The trial court found plaintiffs' offer to compromise was "made in good faith." This finding is not the product of an abuse of discretion. The court rejected Dr. Cooper's argument that this offer was not made in good faith because it was served only two months after he responded to the complaint and was made before he had the opportunity to discover and evaluate the facts underlying the complaint. In its written ruling, the court laid out in considerable detail the information regarding the decedent's annual income and the financial impacts of his death produced during discovery to Dr. Cooper prior to the offer and pointed out that the offer was within Dr. Cooper's insurance policy limits. Dr. Cooper does not challenge any of the factual underpinnings of the trial court's good faith finding.

His position is the offer was unreasonable, because he was not allowed sufficient "time to investigate the facts and evaluate liability and damages . . . prior to the Offer expiring. Specifically, the complexity of the issues presented, the existence of multiple co-defendants and issues of apportionment of damages, in light of the information available to [him] at the time, as well as [plaintiffs'] failure to provide further information after requested to do so before the offer expired, rendered [plaintiffs'] offer unreasonable." As authority, he relies on *Najera v. Huerta* (2011) 191 Cal.App.4th 872 [119 Cal.Rptr.3d 714] *(Najera)*.

Initially, we point out his reliance is misplaced on *Najera,* which is factually inapplicable. In that case, "the section 998 offer was served concurrently with the summons and complaint, [and] there were no special circumstances present to show that at that early (and time-critical) juncture in the case, defendant's counsel had access to information or a reasonable opportunity to evaluate plaintiff's offer within the 30-day period." *(Najera, supra,* 191 Cal.App.4th at p. 879.) In this instance, as recounted above, Dr. Cooper had adequate information to evaluate the reasonableness of the offer.

Additionally, Dr. Cooper does not contend that he advised plaintiffs prior to expiration of the offer that he required additional information and described or identified the information desired as well as how much time he needed to evaluate the offer. He also does not controvert the trial court's finding at the hearing that he "didn't ask for more time."[6] Implicit in this finding is the court's conclusion Dr. Cooper believed he did not need more information and time to determine whether or not to accept the offer. That two others also were named as defendants does not detract from the fact that Dr. Cooper was in a position to determine his own exposure to liability based on his own actions or inactions regarding the decedent.

### 3. *Expert Fees Reasonably Necessary*

Dr. Cooper challenges the costs awarded plaintiffs as expert fees in the total amount of $108,191, consisting of $7,616 to Marianne Inouye; $48,325 to Robert Kahn, M.D.; $50,400 to Ronald Karlsberg, M.D.; and $1,850 to Michelle Cosgrove, M.D. He has failed to carry his burden to show error.

We first conclude Dr. Cooper forfeited any claim of error as to Dr. Cosgrove's fees by failing to challenge them and support the challenge with pertinent argument and applicable authority. *(Do It Urself Moving & Storage,*

---

[6] At oral argument, in response to this court's inquiry, Dr. Cooper's counsel admitted Dr. Cooper did not ask for additional time.

*Inc. v. Brown, Leifer, Slatkin & Berns* (1992) 7 Cal.App.4th 27, 35 [9 Cal.Rptr.2d 396] [well settled that a point merely suggested without supporting argument or authority deemed without foundation and no discussion required].) We further conclude he has failed to carry his burden to establish the amounts awarded as fees to Inouye and Drs. Kahn and Karlsberg were not reasonably necessary.

■ "[T]he mere filing of a motion to tax costs may be a 'proper objection' to an item, the necessity of which appears doubtful, or which does not appear to be proper on its face. [Citation.] However, '[i]f the items appear to be proper charges, the verified memorandum is prima facie evidence that the costs, expenses and services therein listed were necessarily incurred by the defendant [citations], and the burden of showing that an item is not properly chargeable or is unreasonable is upon the [objecting party].' [Citations.]" (*Nelson v. Anderson, supra,* 72 Cal.App.4th at p. 131.)

"If the items in a cost memorandum appear proper, the verified memorandum is prima facie evidence the expenses were necessarily incurred by the" prevailing party. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 858 [57 Cal.Rptr.3d 363].) To controvert this evidence, the burden is on the objecting party to present *evidence* showing the contrary. (*Ibid.* ["Benach's unsubstantiated declaration fails to satisfy this burden."]; see *Jones v. Dumrichob, supra,* 63 Cal.App.4th 1258, 1266 [matters in memorandum or pleading not meet burden].)

In its written ruling, the trial court found: "Here, the Plaintiffs have offered the bills to support the amounts requested [for the fees of the four experts]. [Dr. Cooper] has offered no facts to demonstrate that the amounts were unnecessary or unreasonable. Instead, [he] has only made statements in his reply memorandum. Under California law, this is insufficient to meet [his] burden of showing that the amounts were not reasonable or unnecessary." Dr. Cooper does not disagree with the trial court's finding that he failed to present any facts to show the fees sought were not reasonable or necessary. He merely attacks the billing statements of Dr. Khan as vague, ambiguous, and self-serving and those of Dr. Karlsberg and Inouye as vague, ambiguous, and without foundation. These objections should have been made in the first instance before the trial court and therefore are not properly before this court.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to plaintiffs.

Rubin, Acting P. J., and Grimes, J., concurred.

On February 6, 2013, the opinion was modified to read as printed above.