Filed 9/30/13  Albert v. Satellite Management Co. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| LENORE ALBERT, | |
| Plaintiff and Appellant, | E054601 |
| v. | (Super.Ct.No. RIC376035) |
| SATELLITE MANAGEMENT COMPANY, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Jacqueline C. Jackson, Judge.  Affirmed.

Lenore Albert, in propria persona, for Plaintiff and Appellant.

Cihigoyenetche, Grossberg & Clouse, Katharine L. Spaniac, and Anthony C. Ferguson for Defendant and Respondent.

Geraldine Moss and her husband both worked for defendant Satellite Management Company (Satellite). According to the testimony at trial, Moss arranged to pick up her husband's paycheck from Satellite's office, rather than wait for it to be delivered; he needed it immediately due to the death of his father. On the way back, the vehicle that Moss was in collided with the vehicle that plaintiff Lenore Albert was in.

This is the third appeal in this case. Initially, the trial court granted summary judgment in favor of Satellite. Albert appealed, and we reversed, finding sufficient evidence that Satellite was liable on a respondeat superior theory. (*Albert v. Satellite Management Co., Inc.* (October 7, 2005, E037150) [2005 WL 2476292] [nonpub. opn].) Next, in a jury trial, the jury was instructed that, despite any contrary testimony, it was established that Moss had gone to Satellite's office to collect employees' paychecks and other paperwork. The jury awarded Albert $1,850,800 against Satellite. Satellite appealed, and we reversed, holding that this instruction was prejudicially erroneous. (*Albert v. Satellite Management Co.* (May 16, 2008, E042093) [2008 WL 2070605] [nonpub. opn.].)

Finally, after a bench trial, the trial court found in favor of Satellite and against Albert. In a carefully reasoned statement of decision, it explained that, when the accident occurred, Moss was not acting within the scope of her employment. It entered judgment accordingly.

Albert appeals, contending that the trial court erred by:

1. Ruling that respondeat superior did not apply.

2. Excluding portions of the depositions of Moss and her husband that would have impeached them.

3. Excluding evidence that some insurance company provided some defendant(s) in this case with a defense.

4. Excluding evidence of Albert's mother's death, while admitting evidence of the death of Moss's husband's father.

5. Viewing the second appeal in this case as establishing the law of the case.

6. Awarding Satellite expert witness fees under Code of Civil Procedure section 998.

We find no prejudicial error. Hence, we will affirm.

I

FACTUAL BACKGROUND

A. *Preliminary Statement*.

Both parties' statements of fact are seriously deficient.

In Albert's statement of facts, she cites numerous documents by name (e.g., "Renita Lewis Deposition", "Police Report") rather than by volume and page number, as required. (Cal. Rules of Court, rule 8.204(a)(1)(C).) Albert also cites testimony from the first trial, without providing any citation to show that the testimony was introduced in *this* trial. Moreover, several times, Albert cites Satellite's counsel's opening statement in the first trial. However, "'[i]t is axiomatic that statements by counsel are not evidence . . . .' [Citation.]" (*People v. Solomon* (2010) 49 Cal.4th 792, 814, fn. 10.)

3

Satellite's brief, on the other hand, has no traditional statement of facts whatsoever. Admittedly, the "Introduction" includes a number of asserted facts, including some that Satellite relies on later in its arguments. Some of these, however, are cited only to the trial court's statement of decision.[1] This gives us no way of telling whether the trial court's findings were supported by the evidence. Others are cited to "RT 4:711-716." The reporter's transcript has no volume 4; it has pages 711 to 716, but they consist of a colloquy between the trial court and Albert, not testimony or other evidence. Still other facts are cited to "AA 282-291" and/or "RT 290-659." The former refers to *all of the trial exhibits* that have been provided to us. The latter refers to *a 370-page chunk of the reporter's transcript*. "This is a wholly unacceptable method of appellate advocacy." (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1011 [Fourth Dist., Div. Two].)

For these reasons, we have been forced to craft our own statement of facts, based on our independent examination of the evidence that was before the trial court. We disregard any additional facts asserted in the parties' briefs that have not been supported with an appropriate citation to the record. (*Metis Development LLC v. Bohacek* (2011) 200 Cal.App.4th 679, 683, fn. 1.)

---

[1] To make matters worse, they are cited to the tentative statement of decision, rather than to the final statement of decision.

B.  *Statement of Facts*.

Moss worked for Satellite as the property manager of an apartment complex in Rialto.  Her husband, Curtis Moss, also worked for Satellite as the maintenance technician for the same complex.  They both lived onsite at the complex.

Managers were not required to have a car.  From time to time, however, the Mosses used a personal vehicle for company business — to buy office or cleaning supplies, to go to court for an unlawful detainer, etc.  For this reason, they were each paid $50 a month, over and above their salaries, as a gas stipend.

In addition, on "cutoff" day, which was the 16th of every month, the managers of Satellite's larger properties in the area took turns collecting paperwork from other properties and delivering it to Satellite's main office in Santa Ana.[2]  Moss's gas stipend did not cover this trip; rather, she was paid mileage for it.[3]

Satellite's employees were paid on the first and the fifteenth of the month.  Moss got her paycheck by direct deposit.  Her husband, however, did not.

Tammy Trowbridge was Moss's supervisor.  Ordinarily, Trowbridge delivered paychecks to employees.  On June 1, 2001, however, Moss's husband needed his

---

[2]  Albert asserts that managers made these trips "on the 1st of every month." The cited portion of the record does not support this.

[3]  There was some evidence that the gas stipend *did* cover this trip.  Consistent with the applicable standard of review (see part II, *post*), however, we resolve the conflict in favor of the judgment.

5

paycheck earlier than Trowbridge would normally deliver it,[4] because his father was sick (or perhaps already deceased), and he needed to buy a plane ticket that day. Moss therefore offered to pick up his paycheck for him.

Moss phoned Trowbridge and asked if she could pick up her husband's paycheck; Trowbridge agreed. In general, on the first of the month, it was important for a property manager to remain onsite, to collect rent payments. Nevertheless, Moss did not need Satellite's permission to take time off or to leave the property. She drove to Satellite's office in Santa Ana and picked up the paycheck.[5] Her daughter-in-law, Renita Lewis Moss, came with her in case she got too tired to drive.

---

[4]     Albert states that Trowbridge was "too busy that day" to deliver the payroll. The cited portions of the record do not support this.

[5]     In a deposition, Moss had testified that on June 1, 2001, she went to Satellite's office to pick up the payroll and other paperwork.

She later testified, however, that she was mistaken about this, and she picked up only her husband's paycheck. She explained that she had mixed up the first of the month, which was payroll day, with the 16th of the month, which was cutoff day. The trial court evidently accepted this testimony.

Albert also claims that Satellite made a binding admission that Moss also picked up her own check. Not so. In response to a request for admissions, Satellite stated, "Defendant is informed and believes that Geraldine Moss *requested* her paycheck that day." (Italics added.) This admission that Moss requested her own paycheck — rather than her husband's — appears to have been a mistake. Nevertheless, Satellite has never sought relief from that admission (see Code Civ. Proc., § 2033.300); accordingly, it is bound by it. (Code Civ. Proc., § 2033.410, subd. (a).) However, an admission that Moss *requested* her own paycheck is not an admission that she actually *picked up* her own paycheck. There was ample evidence that she picked up one and only one paycheck, and that paycheck was her husband's.

6

On the way back, Moss's daughter-in-law drove, because Moss was, as expected, feeling sleepy.  While on the 91 Freeway, due to the daughter-in-law's negligence, their vehicle collided with a vehicle in which Albert was a passenger.  Albert sustained various injuries; by the time of trial, she still suffered from blurred and double vision, which prevented her from driving.

II

RESPONDEAT SUPERIOR

Albert contends that the trial court erred by ruling that respondeat superior did not apply.

"The respondeat superior doctrine makes an employer liable, irrespective of fault, for an employee's tortious conduct in the scope of employment.  [Citation.]"  (*Diaz v. Carcamo* (2011) 51 Cal.4th 1148, 1154.)

For respondeat superior to apply, "the incident leading to injury must be an 'outgrowth' of the employment [citation]; the risk of tortious injury must be '"inherent in the working environment"' [citation] or '"typical of or broadly incidental to the enterprise [the employer] has undertaken"' [citation].  [¶] . . . California courts have also asked whether the tort was, in a general way, foreseeable from the employee's duties. Respondeat superior liability should apply only to the types of injuries that '"as a practical matter are sure to occur in the conduct of the employer's enterprise."'  [Citation.]  The employment, in other words, must be such as predictably to create the risk employees will

7

commit intentional torts of the type for which liability is sought." (*Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 298-299.)

"'[T]he fact that an employee is not engaged in the ultimate object of his employment at the time of his wrongful act does not preclude attribution of liability to an employer.' [Citation.] Thus, acts necessary to the comfort, convenience, health, and welfare of the employee while at work, though strictly personal and not acts of service, do not take the employee outside the scope of employment. [Citation.] Moreover, '"where the employee is combining his own business with that of his employer, or attending to both at substantially the same time, no nice inquiry will be made as to which business he was actually engaged in at the time of injury, unless it clearly appears that neither directly nor indirectly could he have been serving his employer." [Citations.]' [Citation.]" (*Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1004.)

"'Although the scope of employment is generally viewed broadly under the respondeat superior doctrine, . . . an employer is not to be held strictly liable for all actions of its employees during working hours. "Significantly, an employer will not be held vicariously liable for an employee's malicious or tortious conduct if the employee *substantially* deviates from the employment duties for personal purposes. [Citations.] Thus, if . . . the misconduct is not an 'outgrowth' of the employment [citation], the employee is not acting within the scope of employment. Stated another way, '[i]f an employee's tort is personal in nature, mere presence at the place of employment and attendance to occupational duties prior or subsequent to the offense will not give rise to a

cause of action against the employer under the doctrine of respondeat superior.'

[Citation.]  In such cases, the losses do not foreseeably result from the conduct of the

employer's enterprise and so are not fairly attributable to the employer as a cost of doing

business." [Citation.]' [Citation.]" (*Jeewarat v. Warner Bros. Entertainment, Inc.*

(2009) 177 Cal.App.4th 427, 435.)

"[I]n the development of the respondeat superior doctrine, courts have

occasionally looked toward workers' compensation cases for guidance.  [Citations.]"

(*Bailey v. Filco, Inc.* (1996) 48 Cal.App.4th 1552, 1562.)  "Although the test under the

workmen's compensation law of "arising out of and in the course of the employment"

[citation], is not identical with the test of "scope of employment" under the *respondeat*

*superior* doctrine [citation], . . . the two tests are closely related [citation]."  (*Hinman v.*

*Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 962, fn. 3.)  But, "'"[s]cope of

employment"' for purposes of respondeat superior is more restrictive than '"arising out of

and in the course of employment"' for workers' compensation.  [Citation.]  That is, '[i]f

an injury is within the "scope of employment," it will probably be "arising out of and

occurring in the course of employment"; however, the reverse is not true.'  [Citation.]"

(*Hartline v. Kaiser Foundation Hospitals* (2005) 132 Cal.App.4th 458, 468.)

Albert argues that the standard of review is de novo.[6]  Not so.  "'Ordinarily, the

determination whether an employee has acted within the scope of employment presents a

---

[6]      In so doing, Albert relies heavily on cases dealing with the standard of
review in an appeal from a summary judgment.  (*Ann M. v. Pacific Plaza Shopping
Center* (1993) 6 Cal.4th 666, 674; *D'Amico v. Board of Medical Examiners* (1974) 11

*[footnote continued on next page]*

question of fact . . . ."'" [Citation.]" (*Lisa M. v. Henry Mayo Newhall Memorial Hospital*, *supra*, 12 Cal.4th at p. 299.) The trier of fact's findings, if based on substantial evidence, are "conclusive on appeal." (*Dillard v. McKnight* (1949) 34 Cal.2d 209, 224.) "Thus, the appellate court considers the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference in resolving conflicts in support of the judgment. [Citation.]" (*Largey v. Intrastate Radiotelephone, Inc.* (1982) 136 Cal.App.3d 660, 665.)

Here, the trial court could properly conclude that the fact that Moss was picking up her husband's paycheck, at her own request and for her own convenience, was controlling. "While injuries sustained by an employee as he proceeds to the place *specified by his employer* for collection of payment may be compensable, [citation], an employee is not acting within the course of his employment where, for his own convenience, he picks up his check at a time and place which he, and not his employer, specifies. [Citations.]" (*Hinkle v. Workers' Comp. Appeals Bd.* (1985) 175 Cal.App.3d

---

*[footnote continued from previous page]*
Cal.3d 1, 21-22; *Kolodge v. Boyd* (2001) 88 Cal.App.4th 349, 355-356; *Romero v. American President Lines, Ltd.* (1995) 38 Cal.App.4th 1199, 1202-1203.) These cases are irrelevant here.

Even worse, Albert fails to *disclose* that these cases were decided in a summary judgment context. This is a breach of her duty of candor to the court — something about which she has been admonished before. (*Crutcher v. Arent Fox, LLP* (May 27, 2009, B202555) [2009 WL 1464388 at p. *3] [nonpub opn.].)

587, 592 [Fourth Dist., Div. Two], fn. omitted, disapproved on other grounds in *Camper v. Workers' Comp. Appeals Bd.* (1992) 3 Cal.4th 679, 690.)

For example, in *Robbins v. Yellow Cab Co.* (1948) 85 Cal.App.2d 811, a husband and wife both worked for the same employer. The wife worked the graveyard shift; the husband worked a day shift. On payday, the wife went to the workplace before her shift began. She picked up and cashed her own check, then picked up her husband's check. On her way out, while crossing a washrack, she slipped and fell. (*Id*. at p. 813.)

The court held that, at that point, the wife was not acting in the course of her employment for workers' compensation purposes. (*Robbins v. Yellow Cab Co.*, *supra*, 85 Cal.App.2d at pp. 813-815.) It stated: "The voluntary visit of an employee to the premises of his employer for the purpose of attending to a strictly personal matter is not such an act as the employee might reasonably be expected to do in the performance of his duties. [Citation.]" (*Id*. at p. 813.) It explained that the wife worked "on the graveyard shift. She could have received her pay check at the commencement of her shift that evening. Instead, she took advantage of the liberal policy of respondent and entered the premises at 3 o'clock in the afternoon. Such policy was for the convenience of its employees, not of respondent. The procurement of her check and that of her husband was an extra[-]curricular endeavor by her in no way related to her employment. Appellant herein might just as readily have been subjected to the hazard of the washrack even though she had never worked a day for respondent. Thus her injury was n[ot] one 'arising out of or in the course of employment' . . . . [Citation.]" (*Id*. at p. 814.)

11

Although *Hinkle* and *Robbins* dealt with the scope of employment for workers' compensation purposes, the scope of employment for purposes of respondeat superior, as discussed above, is even narrower; accordingly, they are controlling.

While we have not found a respondeat superior case that is quite as closely on point, *Bailey v. Filco, Inc.*, *supra*, 48 Cal.App.4th 1552 is close enough to be instructive. There, an employee was on a paid morning break when she went out to buy cookies for herself and other employees to eat while on duty. On the way to the cookie store, she hit another car. (*Id*. at p. 1557.) The court held that the cookie trip was a substantial deviation from the employee's duties and not merely an act of personal comfort and convenience. (*Id*. at pp. 1562-1567.) Here, similarly, Moss took a break from her duties and went on a car trip to obtain an item for personal purposes. Indeed, in *Bailey*, the employee intended to eat the cookies while on duty and to allow other employees to eat them on duty as well. Here, Moss's quest for her husband's check was even more personal.

Albert relies on *Argonaut Ins. Co. v. Industrial Acc. Com.* (1963) 221 Cal.App.2d 140, yet another workers' compensation case. In *Argonaut*, employees at a construction site had to drive to a nearby town to pick up their paychecks from the company "timekeeper." (*Id*. at pp. 142-143; see also *id*. at p. 146.) One employee died in a car crash after leaving the worksite. (*Id*. at pp. 141-142.) There was some evidence that he was on his way to pick up his paycheck. (*Id*. at pp. 143-144.) The Industrial Accident

12

Commission (Commission) found that the accident occurred within the scope of employment for death benefit purposes. (*Id*. at p. 142.)

The appellate court held that there was sufficient evidence to support the Commission's determination. (*Argonaut Ins. Co. v. Industrial Acc. Com.*, *supra*, 221 Cal.App.2d at p. 147.) It found it significant that "[t]he employees . . . were directed by the employer" to pick up their paychecks off the worksite. (*Id*. at p. 146.) "[T]hey were acting at the direction of their employer and in a method and manner incidental to the employment relationship." (*Id*. at p. 147.)

Here, of course, Satellite did not "direct" Moss to pick up her husband's paycheck. Rather, it acceded to her request to be allowed to do so. Thus, *Argonaut* actually supports the trial court's conclusion that Moss was not acting within the scope of her employment. Moreover, even if Satellite *had* so directed Moss, under *Argonaut*, that might *allow* a finding that Moss was within the scope of her employment, but it would not *require* it. *Argonaut* emphasized that the Commission's findings were entitled to deference and had to be upheld if they were supported by substantial evidence. (*Argonaut Ins. Co. v. Industrial Acc. Com.*, *supra*, 221 Cal.App.2d at pp. 148-149.) It had no occasion to consider whether a contrary finding — that the employee was *not* acting within the scope of his employment — would have been erroneous. Finally, as we have already mentioned, a holding in the workers' compensation context that an employee *is* acting within the scope of his employment is not necessarily controlling in the respondeat superior context.

13

Albert also relies on *Gates v. Trans Video Corp.* (1979) 93 Cal.App.3d 196. There, an employee who was on a leave of absence went to his workplace and met with a manager to discuss a dispute over his salary. "[T]empers flared," and the manager ordered the employee to leave the premises. (*Id*. at p. 199.) Before leaving, however, the employee went to the bookkeeper's office, to discuss a check that the company owed his son. The manager found him there and verbally abused him. (*Id*. at pp. 199-200.) A jury awarded the employee damages for intentional infliction of emotional distress. (*Id*. at p. 198.)

The appellate court reversed that award, holding that workers' compensation exclusivity applied. (*Gates v. Trans Video Corp.*, *supra*, 93 Cal.App.3d at pp. 201-206.) It held that the employee was acting within the scope of his employment because he went to the workplace "to settle some matter regarding compensation he felt he was owed. To settle such matters has been held to be of mutual benefit to both the employer and the employee and within the contemplation of the employment contract. [Citation.]" (*Id*. at p. 203.) The employee argued that he "was on a personal errand" because, after meeting with the manager, "he proceeded to the bookkeeper's office in order to get his son's paycheck . . . ." (*Ibid*.) The appellate court disagreed: "The occurrences while [the employee] was in the bookkeeper's office trying to pick up his son's check were a continuation of the incident in [the manager's] office." (*Ibid*.) In other words, it held that he was acting within the scope of his employment despite the fact that he was inquiring about his son's check, not because of it.

14

Albert argues that it was foreseeable that Moss would drive a personal vehicle "for work purposes," because Satellite paid her a gas stipend. This begs the question of whether Moss was in fact using the vehicle for work purposes when the accident occurred. Apparently, by Albert's logic, respondeat superior would apply *any* time Moss used a personal vehicle. But that is not the law. For example, in *Le Elder v. Rice* (1994) 21 Cal.App.4th 1604, the employee hit a bicyclist while driving home in his van after dropping his children off at school. His employer reimbursed him for maintenance costs on the van and paid him mileage for driving the van on company business; he was required to drive the van at least 5,000 miles a year on business. (*Id*. at pp. 1606-1607.) Nevertheless, the appellate court upheld a finding that respondeat superior did not apply, because the employee was on a purely personal errand when the accident occurred. (*Id*. at pp. 1609-1610.)

Albert also argues that Satellite derived a benefit, because Trowbridge was spared the necessity of delivering Curtis's paycheck. However, "[t]he existence or nonexistence of employer benefits is not dispositive in determining vicarious liability. [Citation.]" (*Le Elder v. Rice*, *supra*, 21 Cal.App.4th at p. 1609.)

Next, Albert argues that Trowbridge "authorized" Moss to drive to Satellite's offices to pick up the check. However, this does not make Satellite liable. If Satellite "authorized" Moss to take a week's vacation, that would not mean that everything Moss did during that week would be within the scope of her employment; quite the contrary.

15

Albert argues that Satellite is liable under the "required vehicle" exception to the "going and coming rule," citing *Lobo v. Tamco* (2010) 182 Cal.App.4th 297 [Fourth Dist., Div. Two]. "Under the 'going and coming' rule, an employee going to and from work is ordinarily considered outside the scope of employment so that the employer is not liable for his torts. [Citation.]" (*Hinman v. Westinghouse Elec. Co.*, *supra*, 2 Cal.3d at p. 961.) However, the going and coming rule is "'riddled with exceptions' . . . ." (*Santa Rosa Junior College v. Workers' Comp. Appeals Bd.* (1985) 40 Cal.3d 345, 352.)

As relevant here, "the 'required-vehicle' exception . . . can apply if the use of a personally owned vehicle is either an express or implied condition of employment [citation], or if the employee has agreed, expressly or implicitly, to make the vehicle available as an accommodation to the employer and the employer has 'reasonably come to rely upon its use and [to] expect the employee to make the vehicle available on a regular basis while still not requiring it as a condition of employment.' [Citation.]" (*Lobo v. Tamco*, *supra*, 182 Cal.App.4th at p. 301, fn. omitted.)

The required vehicle exception does not apply here, however, because the going and coming rule itself does not apply. Our rationale for concluding that Satellite is not liable, as discussed above, has nothing to do with whether Albert was going to or coming from work. Indeed, it is not at all clear that the going and coming rule could ever apply to Moss, as her home and her workplace were the same place. Certainly Albert has not cited any authority for applying the going and coming rule under these circumstances.

16

Separately and alternatively, even assuming the required vehicle exception could apply, there was substantial evidence from which the trial court could conclude that Satellite did not require or expect Moss to make her personal vehicle available for work purposes. Managers were not required to have a car; Satellite employed at least one manager who did not drive. If Moss chose to drive a personal vehicle for work purposes, she was eligible for a gas stipend. The trial court could reasonably find, however, that this was an accommodation to her, not to Satellite; she could have chosen not to drive at all.

Finally, Albert argues that Satellite is liable under the "bunkhouse rule." Under this rule, for worker's compensation purposes, "[w]hen an employee is injured while living on the employer's premises, the course of employment requirement . . . is satisfied if the employment contract of the employee contemplates, or the work necessity requires, the employee to reside on the employer's premises. [Citation.]" (*Vaught v. State of California* (2007) 157 Cal.App.4th 1538, 1545, italics omitted.) The bunkhouse rule is irrelevant here because the accident did not occur on Satellite's premises.

We therefore conclude that the trial court's finding that respondeat superior did not apply was supported by substantial evidence.

III

MISCELLANEOUS CONTENTIONS

A.      *Exclusion of Moss's Deposition*.

Albert contends that the trial court erred by excluding portions of the depositions of Moss and her husband that supposedly would have impeached them.**7**

In support of this contention, Albert cites only one specified page of the reporter's transcript. We deem Albert to have forfeited her contention with respect to all but this page of the transcript. On that page, Satellite objected to just one deposition — Moss's — on the ground that it had been taken before Satellite became a party, and thus Satellite had not had an opportunity to cross-examine Moss. The trial court sustained this objection.

Code of Civil Procedure section 2025.620 allows a deposition to be used at trial for certain purposes, including to impeach the testimony of the deponent as a witness, against "any party who was present or represented at the taking of the deposition, or who had due notice of the deposition and did not serve a valid objection . . . ." Here, Satellite did not have notice of the deposition, and it was not present or represented at the deposition. Albert does not explain why Code of Civil Procedure section 2025.620 did

---

**7**      This argument is far from clear. At least one paragraph is not entirely coherent. Another seems to have been cut and pasted from some other case, as it refers to a "fall" and an "oil drip pan," which are not involved here.

not bar the admission of the deposition.  She argues only that the deposition was *relevant*, i.e., to impeach.  Thus she has forfeited any challenge to the trial court's *actual* ruling.

Moreover, Albert does not cite the portions of Moss's deposition that were assertedly impeaching.  She merely provides a blanket citation to "AA 93-230."  This turns out to be the depositions of Geraldine Moss, Curtis Moss, and Renita Lewis Moss, in their entirety.  "It is not our place to comb the record seeking support for assertions parties fail to substantiate.  [Citation.]"  (*Howard v. American National Fire Ins. Co.* (2010) 187 Cal.App.4th 498, 534.)  Thus, Albert has not shown that the trial court's ruling was either erroneous or prejudicial.

B.      *Exclusion of Insurance Evidence.*

Next, Albert contends that the trial court erred by excluding evidence that an insurer provided somebody (apparently Satellite and/or Moss) with a defense.

Albert has not cited the proffered evidence, any objection to that evidence, or the trial court's actual ruling.  We therefore deem her to have forfeited this contention.

C.      *Evidence of Albert's Mother's Death and Curtis's Father's Death.*

Albert contends that the trial court erred by excluding evidence of her mother's death, while admitting evidence of Moss's father-in-law's death.

Yet again, she has not cited the proffered evidence, any objections to the evidence, or the trial court's ruling.  For example, she claims that her mother's death was relevant to damages; however, she has not shown that there was any evidence that the accident caused her any damages arising out of or related to her mother's death.  As another

19

example, she has not shown that she objected to the evidence regarding Moss's father-in-law's death. (See Evid. Code, § 353, subd. (a).) Thus, she has forfeited this contention.

We also note that the rulings could not have been prejudicial. The trial court ruled that Satellite was not liable; hence, the exclusion of the evidence of Albert's mother's death, which was relevant, if at all, solely to damages, could not possibly have been prejudicial.

Moreover, we see no reasonable probability that the trial court was influenced by the fact that, on the date of the accident, Moss's father-in-law was dying or dead, as the trial took place almost ten years later and Moss's husband was not a party; indeed, as Albert points out herself, he was not even involved in the accident.

D.    *Application of the Doctrine of Law of the Case.*

Albert also contends that the trial court erroneously viewed the second appeal in this case as establishing the law of the case.[8]

She has not cited the portion of the record in which the trial court supposedly did this. Certainly we find nothing in its statement of decision to this effect. We therefore deem this contention, too, to have been forfeited.

---

[8]    This argument, again, is far from clear. It refers to a "trip and fall" and to "summary judgment," neither of which is involved in this case. We construe the argument as raising only the issue stated in its caption, which states: "The court confused the appeal's factual dictum to be law of the case." (Capitalization altered.) (See Cal. Rules of Court, rule 8.204(a)(1)(B).)

20

IV

SATELLITE'S SECTION 998 OFFER

Albert contends that the trial court erred by awarding expert witness fees to Satellite under Code of Civil Procedure section 998.[9]

A.  *Additional Factual and Procedural Background.*

Satellite served Albert with a statutory offer to compromise pursuant to Code of Civil Procedure section 998.  The offer was in the amount of $50,001; it provided that this amount was to "include all lien claims, and all claims of liability and damage that are alleged in plaintiff's [c]omplaint, and . . . all claims for attorney's fees and costs."

The offer was "conditioned on receipt of the following:

"1.  The entry of a Request for Dismissal with prejudice on plaintiff's complaint . . . .

"2.  The execution and transmittal in favor of Satellite . . . of a general release by . . . Albert . . . ."

The offer also stated:  "[A]cceptance of this offer by the plaintiff will not result in entry of judgment against defendant, but will result in a final disposition of the case via Request for Dismissal and General Release of all Claims, to be signed by the plaintiff."

Albert did not accept the offer.

---

[9]    Albert mentions in passing that the trial court also awarded jury fees incurred in the first trial; however, she never specifically argues that this award was erroneous.

21

After entry of judgment, Satellite filed a memorandum of costs seeking, among other things, $16,153 in expert witness fees.

Albert filed a motion to tax costs, arguing, among other things, that the amount of the section 998 offer was unreasonable. In her reply memorandum, she additionally argued that the offer did not comply with section 998 because (1) it did not provide that it could be accepted by signing a statement of acceptance, (2) it improperly provided for a release and dismissal rather than the entry of a judgment, and (3) its true worth was unclear because it included lien claims.

In ruling on the motion to tax costs, the trial court allowed Satellite to recover its expert witness fees.

B.    *Analysis.*

Satellite was entitled to recover its expert witness fees if — and only if — its section 998 offer was valid. (Compare Code Civ. Proc., § 1033.5, subds. (a)(8) & (b)(1) with Code Civ. Proc., § 998, subd. (d).)

Albert argues that the section 998 offer was invalid for five reasons. She raised most of these points for the first time in her reply memorandum below. The trial court could reject them for this reason alone. (See *Ramsey v. City of Lake Elsinore* (1990) 220 Cal.App.3d 1530, 1546 [Fourth Dist., Div. Two]; Rylaarsdam et al., Cal. Civil Procedure Before Trial (The Rutter Group 2012) ¶ 9:106.1.) We discuss them below, but only to set out alternative grounds for rejecting them.

First, Albert argues that the offer did not allow her to accept by signing a statement of acceptance. Section 998, subdivision (b) provides: "The . . . offer shall include . . . a provision that allows the accepting party to indicate acceptance of the offer by signing a statement that the offer is accepted." An offer that lacks such a provision is invalid. (*Boeken v. Philip Morris USA Inc.* (2013) 217 Cal.App.4th 992, 1003-1004.)

Here, however, the offer stated: "[A]cceptance of this offer by the plaintiff . . . will result in a final disposition of the case via Request for Dismissal and General Release of all Claims, *to be signed by the plaintiff*." (Italics added.) While perhaps not absolutely pellucid, this did communicate the fact that signing a request for dismissal and a general release would constitute acceptance. This was sufficient to satisfy the statute.

Next, she argues that Satellite could not properly require a release and dismissal. A section 998 offer must be an offer "to allow judgment to be taken or an award to be entered in accordance with the terms and conditions stated . . . ." (Code Civ. Proc., § 998, subd. (b).) A dismissal is one kind of judgment. (Code Civ. Proc., § 581d; see also *id.*, § 577.) The requirement of a release is a condition. Thus, it is well-established that a section 998 offer may provide for a release and a dismissal. (*Linthicum v. Butterfield* (2009) 175 Cal.App.4th 259, 271-272; *American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton* (2002) 96 Cal.App.4th 1017, 1054-1055; *Goodstein v. Bank of San Pedro* (1994) 27 Cal.App.4th 899, 907.)

Albert also argues that the release requirement was void as against public policy under Civil Code section 1668. That statute, as relevant here, provides: "All contracts

23

which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." This contention is frivolous. The offer as a whole did not seek to "exempt" Satellite from "responsibility." Satellite was offering to pay Albert more than $50,000 in settlement.

Albert then argues that the provision that the offer included lien claims made the offer unclear. Not at all. Even if it had not so provided, the effect of the offer on lien claims would have been the same; any lienholder[10] would be entitled to enforce its lien against the settlement proceeds. It would be absurd to suppose that Satellite was offering to settle with Albert, yet remain liable to lienholders. In any event, if there were lien claims, Albert would simply have to pay them or settle them. The need to do so might make the offer less attractive to Albert, but it does not make it unclear.

The sole argument that Albert raises that she also raised in her moving papers below was that the offer was not in good faith because the amount was too small. "'The purpose of section 998 is to encourage the settlement of litigation without trial. [Citation.] To effectuate the purpose of the statute, a section 998 offer must be made in good faith to be valid. [Citation.] Good faith requires that the pretrial offer of settlement be "realistically reasonable under the circumstances of the particular case . . . ." [Citation.] The offer "must carry with it some reasonable prospect of acceptance.

---

[10]    Albert asserts that a third party was, in fact, claiming a lien; however, she does not cite any support in the record for this assertion, so we must disregard it.

24

[Citation.]" [Citation.]' [Citation.]" (*Whatley-Miller v. Cooper* (2013) 212 Cal.App.4th 1103, 1112.) "Whether a section 998 offer was reasonable and made in good faith is left to 'the sound discretion of the trial court.' [Citation.]" (*Adams v. Ford Motor Co.* (2011) 199 Cal.App.4th 1475, 1484.)

"'[W]hen a party obtains a judgment more favorable than its pretrial offer, [the offer] is presumed to have been reasonable and the opposing party bears the burden of showing otherwise.' [Citations.]" (*Essex Ins. Co. v. Heck* (2010) 186 Cal.App.4th 1513, 1528.) Here, Satellite offered Albert more than $50,000, and Albert recovered zero. Albert's only argument to the effect that this was unreasonable is that there were lien claims. We repeat, however, that she has not cited any support for that in the record. Even assuming it is true, $50,000 that can be used to pay lien claims is still better than the zero that Albert actually recovered. We perceive no abuse of discretion.

V

DISPOSITION

The judgment is affirmed.  Satellite is awarded costs on appeal against Albert.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


RICHLI
                                                                              J.

We concur:


RAMIREZ
                        P. J.

KING
                        J.