Filed 10/11/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ED AGUILAR, | B238853 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. EC 039462) |
| v. | |
| LARRY GOSTISCHEF, | |
| Defendant, | |
| FARMERS INSURANCE EXCHANGE, | |
| Intervener and Appellant. | |

 

APPEAL from an order of the Superior Court of Los Angeles County, William D. Stewart and Ricardo A. Torres, Judges.  Affirmed.

Mendes & Mount, Dean B. Herman, Catherine L. Rivard and Stuart L. Brody for Intervener and Appellant.

The Yarnall Firm, Delores A. Yarnall; Ammirato & Palumbo, Bruce Palumbo; Moray & Vallette and Diane Vallette for Plaintiff and Respondent.

\* \* \* \* \* \*

This personal injury lawsuit following a motor vehicle accident has spawned years of litigation. In the first appeal, we reversed the entry of a judgment notwithstanding the verdict and ordered the trial court to reinstate the $2.3 million verdict in favor of respondent Ed Aguilar. The trial court reinstated the verdict and then ordered appellant Farmers Insurance Exchange (Farmers) to pay Aguilar's costs. The costs were substantial because Aguilar had made an offer pursuant to Code of Civil Procedure section 998 (section 998), which Farmers had rejected.

In this appeal, Farmers cites no case suggesting it was improper for the trial court to consider whether an insurer may be liable for an excess judgment when evaluating whether a section 998 offer was reasonable, and we decline to be the first court to so hold. We affirm the cost award.

## FACTS AND PROCEDURE

On January 3, 2004, Aguilar and Larry Gostischef were involved in a motor vehicle accident. At the time of the accident, Gostischef was insured by Farmers with a policy containing a $100,000 limit for each person. Aguilar was injured badly, and the parties agree that costs amounting to $507,718 were reasonable and necessary for past medical expenses. (*Aguilar v. Gostischef* (May 2, 2011, B217824) [nonpub. opn.] (*Aguilar I*).)

On February 4, 2004, Aguilar's counsel wrote Farmers requesting discovery of the policy limit. Farmers did not respond. On March 12, 2004, Aguilar's counsel again wrote Farmers, requesting discovery of the policy limit. Farmers did not respond. On April 9, 2004, Aguilar's counsel wrote Farmers as follows: "My client has asked to know the policy limits so that he can make a policy limits demand and resolve this case and move on with his life. Unfortunately, until and unless we are advised of the limits in coverage, we are not able to make a policy limits demand. He is, however, prepared to do so upon being advised of the limits. [¶] Once again, we entreat you to get permission from your insured to disclose the policy limits, provide them to us in the form of a certified policy and declaration, so that we can then immediately demand policy limits. Please favor us with a reply within the next two weeks." Farmers did not respond.

2

On August 27, 2004, Aguilar sued Gostischef alleging a single cause of action for personal injury. (*Aguilar I*, *supra*, B217824.)

On October 30, 2004, Farmers wrote Aguilar's counsel offering to pay the $100,000 policy limit to settle the case. Farmers informed Aguilar's counsel that Gostischef lived on Social Security and had no real property assets. On November 16, 2004, Gostischef presented Aguilar with a section 998 offer to compromise for $100,000.

In correspondence dated February 1, 2005, Aguilar's counsel wrote Farmers arguing that Farmers would be liable for an excess judgment because Farmers ignored three attempts to settle the matter within policy limits.

On April 6, 2005, Aguilar made on offer pursuant to section 998 in the amount of $700,000.[1] Farmers responded on April 13, 2005, that it would settle the case for $100,000.

The case proceeded to jury trial. Jurors found Gostischef negligent and Aguilar contributorily negligent. Jurors awarded Aguilar $4,679,314 in damages, but reduced the verdict to $2,339,657 to account for Aguilar's contributory negligence. Farmers obtained a judgment notwithstanding the verdict, which we reversed on appeal. (*Aguilar I*, *supra*, B217824.) Following the appeal, the trial court reinstated the judgment in Aguilar's favor. Aguilar sought $1,639,451.14 in costs. Gostischef moved to tax costs in the trial court. Among other things, Gostischef argued that Aguilar's section 998 offer was not made in good faith. Farmers did not move to tax costs in the trial court. Aguilar's requested costs included prejudgment interest, which is calculated from the date of Aguilar's section 998 offer because Aguilar obtained a judgment more favorable than his section 998 offer. (Civ. Code, § 3291.)

The trial court concluded Aguilar's section 998 offer was made in good faith. It explained: "In order to be made in good faith, a pretrial offer to compromise under CCP section 998 must be realistically reasonable under the circumstances of the particular

---

[1] There is a typographical error in the offer, but it is undisputed that it was made on this date and the proof of service so reflects.

3

case." The court continued: "The Defendant argues that the offer was not made in good faith because the Plaintiff was informed that the Defendant had a $100,000 policy limit and that he was facing major financial struggles. However, this case involves a claim that the Plaintiff suffered the loss of a leg. It is not bad faith for the Plaintiff to seek an amount commensurate to his loss. Further, the fact that the Plaintiff recovered substantially more money at trial than his settlement amount is prima facie evidence showing that the offer was reasonable." The trial court taxed costs in the amount of $5,903.85 and awarded the remainder. Farmers challenges the costs award on appeal.

## DISCUSSION

### 1. Aguilar Has Not Shown the Appeal Should Be Dismissed

Aguilar argues the appeal must be dismissed because Farmers filed the notice of appeal in a different case. We disagree, as *D'Avola v. Anderson* (1996) 47 Cal.App.4th 358, 362 makes clear that affixing the wrong case number on a notice of appeal does not warrant dismissal. "Although competent attorneys will ensure that the correct case number is affixed to the notice of appeal, there is *no* authority for the proposition that an incorrect case number deprives an appellate court of jurisdiction." (*Ibid*.) Aguilar's motion to dismiss the appeal is denied.

### 2. Farmers Has Not Shown the Trial Court Abused Its Discretion in Concluding Aguilar Made the Section 998 Offer in Good Faith

For purposes of this appeal we assume that Farmers preserved the claim that the section 998 offer was not made in good faith.[2] Farmers argues Aguilar could not have made the offer in good faith because there was no reasonable anticipation of acceptance of the offer by Gostischef who lacked the financial means to pay and no reasonable expectation Farmers could be liable for the amount of the section 998 offer in light of the

---

[2] In the trial court, Gostischef filed a motion arguing that the section 998 offer was not made in good faith. Although Farmers had earlier intervened in this lawsuit, Farmers neither filed a motion nor made any argument at the hearing. For purposes of this appeal, we assume Farmers preserved its argument even though Gostischef, not Farmers, raised the contention in the trial court.

$100,000 policy limit. With respect to the latter argument, Farmers warns that "[t]his Court will not be deciding whether or not Farmers has any liability to indemnify Gostischef against Aguilar's claim beyond the policy limits," but instead requests this court determine only whether Aguilar's offer was reasonable when made.[3]

We recently explained the relevant principles in determining whether a section 998 offer was made in good faith: "'The purpose of section 998 is to encourage the settlement of litigation without trial. [Citation.] To effectuate the purpose of the statute, a section 998 offer must be made in good faith to be valid. [Citation.] Good faith requires that the pretrial offer of settlement be "realistically reasonable under the circumstances of the particular case. . . ." [Citation.] The offer "must carry with it some reasonable prospect of acceptance. [Citation.]" [Citation.]' [Citation.] [¶] Whether the offer is reasonable 'depends upon the information available to the parties as of the date the offer was served.' [Citation.] Reasonableness generally 'is measured, first, by determining whether the offer represents a reasonable prediction of the amount of money, if any, defendant would have to pay plaintiff following a trial, discounted by an appropriate factor for receipt of money by plaintiff before trial, all premised upon information that was known or reasonably should have been known to the defendant,' and '[i]f an experienced attorney or judge, standing in defendant's shoes, would place the prediction within a range of reasonably possible results, the prediction is reasonable.' [Citation.] [¶] 'If the offer is found reasonable by the first test, it must then satisfy a second test: whether [plaintiff's] information was known or reasonably should have been known to [defendant]. This second test is necessary because the section 998 mechanism works only where the offeree has reason to know the offer is a reasonable one. If the offeree has no reason to know the offer is reasonable, then the offeree cannot be expected to accept the offer.' [Citation.]" (*Whatley-Miller v. Cooper* (2013) 212 Cal.App.4th 1103, 1112.)

---

[3]    The parties are litigating whether Farmers is liable for a judgment in excess of Gostischef's policy limits in a separate case.

5

Applying these principles here, we are not persuaded the trial court abused its discretion in finding the section 998 offer was not made in bad faith. Aguilar clearly conveyed to Farmers in the first few months after the accident an interest in discussing settlement within policy limits. Farmers made no response to any of Aguilar's requests to know the policy limits or his stated intent to make a settlement demand within policy limits. Farmers acknowledges in its opening brief that "[a]s a general rule and subject to some qualifications, an insurer that refuses a reasonable offer of settlement within policy limits by an injured third-party claimant is liable to the insured for the resulting judgment without regard to policy limits." While Farmers is correct that this appeal does not present the question whether Farmers may be liable to pay the judgment beyond the policy limits, Farmers has not demonstrated that Aguilar acted in bad faith under all the circumstances of this case when he made a section 998 offer in excess of the policy limits.

Regardless of whether Aguilar ultimately prevails in his lawsuit to recover the judgment against Farmers, Farmers fails to show it was unreasonable for Aguilar to believe Farmers may be liable for a judgment in excess of policy limits. Prior to filing a lawsuit, Aguilar had written Farmers three times asking for policy limits of Gostischef's policy. In his last letter, Aguilar stated: "My client has asked to know the policy limits so that he can make a policy limits demand and resolve this case and move on with his life. Unfortunately, until and unless we are advised of the limits in coverage, we are not able to make a policy limits demand. He is, however, prepared to do so upon being advised of the limits. [¶] Once again, we entreat you to get permission from your insured to disclose the policy limits, provide them to us in the form of a certified policy and declaration, so that we can then immediately demand policy limits. Please favor us with a reply within the next two weeks." That letter may be interpreted as a genuine offer to settle; it was not necessarily a ploy to set up a bad faith case as Farmers argues. Whether it should be interpreted as genuine or as a ploy is beyond the scope of this appeal.

6

*Boicourt v. Amex Assurance Co.* (2000) 78 Cal.App.4th 1390 supports the conclusion that an insurer can be liable for an excess judgment absent a formal settlement offer under limited circumstances. In *Boicourt*, the court held that an insurer's blanket policy of refusing to disclose policy limits in advance of litigation may give rise to a bad faith claim. (*Id*. at p. 1392.) As relevant here, the *Boicourt* court reasoned that "a liability insurer '"is playing with fire"' when it refuses to disclose policy limits. Such a refusal '"cuts off the possibility of receiving an offer within the policy limits"' by the company's '"refusal to open the door to reasonable negotiations."'" (*Ibid*.) In *Boicourt*, the appellate court reversed a summary judgment "based on the idea that there could be no conflict of interest absent a formal settlement offer" concluding instead that a conflict of interest between insurer and insured could arise even absent a formal settlement offer. (*Ibid*.)

Here, no evidence indicated Farmers had a blanket policy of refusing to disclose a policy limit, but there was evidence Farmers delayed, perhaps unreasonably in disclosing Gostischef's policy limit, and that delay *may* support bad faith liability. (See *Boicourt v. Amex Assurance Co.*, *supra*, 78 Cal.App.4th at p. 1394.) Aguilar's letter stating that he would settle for policy limits reasonably can be understood as a settlement opportunity (regardless of whether it is ultimately determined to be such). In the current appeal, Farmers has not shown Aguilar could have no reasonable expectation of acceptance of his $700,000 offer such that the trial court abused its discretion in finding Aguilar acted in good faith. (*Culbertson v. R. D. Werner Co., Inc.* (1987) 190 Cal.App.3d 704, 710 [An abuse exists only when the trial court exercised its discretion in an arbitrary, capricious or patently absurd manner.].)

The final step in determining whether an offer was reasonable is to determine the information known to Farmers. Farmers does not address this step. In any event, the parties' correspondence shows Aguilar revealed his position that Farmers may be liable for an excess judgment well in advance of his section 998 offer. Thus, although Farmers vigorously disputes the excess claim and although Farmers' position *may* ultimately be meritorious (a question on which we express no opinion), Farmers has not shown that the

trial court abused its discretion in concluding Aguilar acted in good faith in requesting $700,000, which as the trial court noted was less than one-third of the ultimate recovery.[4] (*Whatley-Miller v. Cooper, supra*, 212 Cal.App.4th at p. 1113 ["""'["]The burden is on the party complaining to establish an abuse of discretion . . . .""""].)

## DISPOSITION

The order awarding costs is affirmed.

FLIER, J.

WE CONCUR:

RUBIN, Acting P. J.

GRIMES, J.

---

[4] Because we conclude Aguilar's belief Farmers may be liable for an excess judgment was reasonable, we need not consider whether it was reasonable to expect Gostischef himself would accept the offer irrespective of coverage of his insurer.

Aguilar's motions for judicial notice are denied as Aguilar has not shown the judicial records for which he seeks judicial notice are relevant to the limited issue in the current appeal.