Filed 1/24/19 (unmodified opn. attached)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DIONNE LICUDINE,<br><br>        Plaintiff and Appellant,<br><br>        v.<br><br>CEDARS-SINAI MEDICAL CENTER et al.,<br><br>        Defendants and Respondents. | B286350<br><br>(Los Angeles County<br>Super. Ct. No. BC499153)<br><br>**ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING**<br><br>**[NO CHANGE IN JUDGMENT]** |

THE COURT:

It is ordered that the opinion filed herein on January 3, 2019, be modified as follows:

1.  On page 12, at the top of the page in bullet point (1), after the language "stating that her doctors' negligence was "self-evident," add the following:

> that Dr. Gupta had "informed the family that he penetrated so far because [plaintiff] was 'too skinny . . . .'"

2.  On page 13, the first full paragraph, second sentence, after the language "On the question of liability," add the following:

Dr. Gupta may have admitted to holding the instrument that nicked plaintiff's vein but . . . .

3. On page 16, the first full paragraph, first sentence, delete "a general" in front of "objection" and add "an" so that the text reads "an objection . . . ."

There is no change in the judgment.

Appellant's petition for rehearing is denied.

_____
* ASHMANN-GERST, Acting P.J.,  CHAVEZ, J.,  HOFFSTADT, J.

Filed 1/3/19 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DIONNE LICUDINE, | B286350 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC499153) |
| v. | |
| CEDARS-SINAI MEDICAL CENTER et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County. David S. Cunningham, Judge. Affirmed.

Howard A. Kapp, Los Angeles, for Plaintiff and Appellant.

Horvitz & Levy LLP, S. Thomas Todd, and Emily V. Cuatto, Burbank, for Defendant and Respondent.

\* \* \* \* \* \*

A plaintiff who sues and prevails at trial is statutorily entitled to prejudgment interest starting from the date she makes a settlement offer under Code of Civil Procedure section 998 (a so-called "998 offer")[1] as long as that offer is "valid," and the subsequent verdict is "more favorable" than the rejected 998 offer. (Civ. Code, § 3291; *Elrod v. Oregon Cummins Diesel, Inc.* (1987) 195 Cal.App.3d 692, 698 (*Elrod*).) A 998 offer is valid only if, among other things, the offeror knew that the offeree had reasonable access to the facts necessary to "intelligently evaluate the offer." (*Id.* at pp. 699-700; *Najera v. Huerta* (2011) 191 Cal.App.4th 872, 878 (*Najera*).) What factors are relevant in deciding whether the offeree had enough facts to evaluate the offer? Although courts should evaluate the totality of the facts (*Arno v. Helient Corp.* (2005) 130 Cal.App.4th 1019, 1026 (*Arno*)), we conclude that three factors are especially pertinent: (1) how far into the litigation the 998 offer was made; (2) the information available to the offeree prior to the 998 offer's expiration; and (3) whether the offeree let the offeror know it lacked sufficient information to evaluate the offer, and how the offeror responded. Applying these factors in this case, we conclude that the trial court did not abuse its discretion in finding that the plaintiff's 998 offer was not made in good faith. We accordingly affirm the order denying plaintiff prejudgment interest.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

# FACTS AND PROCEDURAL BACKGROUND

## I.    Facts[2]

In February 2012, Dionne Licudine (plaintiff) underwent gallbladder removal surgery.  The surgery was performed by Dr. Ankur Gupta under the supervision of Dr. Brenden Carroll at defendant Cedars-Sinai Medical Center (Cedars).  The surgery was intended to be minimally invasive, but Dr. Gupta nicked a vein inside the abdominal cavity and caused substantial internal bleeding.  This necessitated a more invasive surgery that left plaintiff with a large scar, a month-long hospitalization and a chronic abdominal condition.

## II.    Procedural Background

### A.    *Complaint*

On January 15, 2013, plaintiff filed a medical malpractice lawsuit against Cedars, Dr. Gupta, Dr. Carroll and the Regents of the University of California (collectively, defendants).  The complaint was three pages long.  With respect to liability, plaintiff alleged that the defendants' provision of medical services was "below the standard of care."  With respect to damages, plaintiff alleged only that she (1) had suffered "personal injuries and related emotional distress," (2) had incurred "medical, nursing, health care, hospital and medical expenses," (3) had suffered a "loss of wages, profits, and earning capacity," and (4) incurred "other damages and injuries to be proven but which at this time are unknown."  She prayed "for damages within the jurisdiction of the Court."

---

[2]    We draw these facts largely from our prior published opinion in *Licudine v. Cedars-Sinai Medical Center* (2016) 3 Cal.App.5th 881 (*Licudine I*).

3

It was not until May 23, 2013 that plaintiff served her complaint on Cedars. Cedars filed its answer on June 6, 2013, along with a demand for written discovery and for a statement of damages.

### B. *Section 998 offer*

On June 11, 2013, plaintiff mailed Cedars an "Offer to Compromise" pursuant to section 998. Specifically, she "offer[ed] to allow judgment to be taken against Cedars and in favor of the plaintiff in the amount of $249,999.99, plus legal costs."

On June 27, 2013, Cedars sent plaintiff a written "Objection" to the 998 offer. In its objection, Cedars noted that plaintiff made her 998 offer only five days after Cedars had filed its answer. As Cedars explained, this was "too soon for it to make any determination as to whether plaintiff's [998 offer] was reasonable" because Cedars had "not had an opportunity to fully investigate this action."

The offer expired on July 16, 2013. (§§ 998, subd. (b)(2) [offer expires 30 days after it is made], 1013, subd. (a) [five additional days added for mailed offers].) Cedars did not accept the offer prior to its expiration.

### C. *First trial and appeal*

The matter proceeded to trial. A jury found Cedars liable for malpractice and awarded plaintiff $1,045,000 in damages. Both Cedars and plaintiff moved for a new trial on damages, and the trial court granted both motions and set the matter for a new damages trial. We affirmed the trial court's orders. (*Licudine I*, *supra*, 3 Cal.App.5th 881.)

### D. *Damages retrial*

A jury returned a total damages award of $7,619,457, comprised of $5,344,557 in economic damages and $2,274,900 in

4

noneconomic damages.[3]  Pursuant to the statutory cap on noneconomic damages applicable in medical malpractice cases (Civ. Code, § 3333.2), the trial court reduced the noneconomic damages verdict to $250,000, yielding a total verdict of $5,594,557.

### E.  *Request for prejudgment interest*

Plaintiff filed a memorandum of costs seeking, among other things, $2,335,929.20 in prejudgment interest from the date of her 998 offer to the date of judgment.[4]  Cedars filed a motion to strike plaintiff's prejudgment interest request, arguing that her 998 offer was "invalid" because it was "made so early in the proceedings that [Cedars] did not have a fair opportunity to intelligently evaluate it."  Following full briefing, the court held a hearing.  Toward the end of the hearing, plaintiff sought to supplement her briefing, but the trial court denied her request.  After further argument, the court struck plaintiff's request for prejudgment interest.  In so ruling, the court found that plaintiff's 998 offer had been "premature" because Cedars had not "ha[d] an adequate opportunity to evaluate the damages in this case at the time of the 998 offer."

### F.  *Appeal*

Plaintiff filed this timely appeal.

---

[3]     While the trial court miscalculated the total *unreduced* damages award as $7,619,257, this miscalculation is of no consequence.  The court correctly calculated the total reduced damages award.

[4]     The parties do not dispute plaintiff's calculation of the amount of prejudgment interest.

5

**DISCUSSION**

If a plaintiff makes an offer to settle a lawsuit pursuant to section 998 that the defendant does not accept, and if the plaintiff ultimately obtains a "more favorable judgment," she is entitled to have the defendant pay (1) the costs of her expert witnesses incurred after the 998 offer was made (§ 998, subds. (b) & (d)), and (2) prejudgment interest at the rate of 10 percent starting from the date of the 998 offer (Civ. Code, § 3291; *Wilson v. Wal-Mart Stores, Inc.* (1999) 72 Cal.App.4th 382, 392-393). However, a plaintiff is entitled to this additional recovery only if her 998 offer is "valid." (*Barella v. Exchange Bank* (2000) 84 Cal.App.4th 793, 799 (*Barella*); *Chen v. Interinsurance Exchange of the Automobile Club* (2008) 164 Cal.App.4th 117, 121.) Plaintiff argues that the trial court erred in ruling that her 998 offer was not valid. Where, as here, the underlying facts are disputed, we review the trial court's ruling solely for an abuse of discretion. (*Timed Out LLC v. 13359 Corp.* (2018) 21 Cal.App.5th 933, 942 (*Timed Out*).) As the appellant, plaintiff bears the burden of proving that the trial court abused its discretion. (*Najera, supra,* 191 Cal.App.4th at p. 877.)

**I.     The Pertinent Law on the Validity of 998 Offers**

A 998 offer is valid only if it is made in "good faith." (*Elrod, supra,* 195 Cal.App.3d at p. 698; *Wear v. Calderon* (1981) 121 Cal.App.3d 818, 821 (*Wear*); *Regency Outdoor Advertising, Inc. v. City of Los Angeles* (2006) 39 Cal.4th 507, 531 (*Regency*) [assuming "good faith" is required].) A 998 offer is made in good faith only if the offer is "'realistically reasonable under the circumstances of the particular case'" (*Elrod*, at p. 698, quoting *Wear*, at p. 821)—that is, if the offer "carr[ies] with it some reasonable prospect of acceptance" (*Regency*, at p. 531).

6

Although section 998's text does not itself condition validity upon an offeror's good faith, such a requirement is necessarily implied by the statute's purpose: Section 998 is meant "to encourage the settlement of lawsuits prior to trial" (*T.M. Cobb v. Superior Court* (1984) 36 Cal.3d 273, 280; *Poster v. Southern California Rapid Transit Dist.* (1990) 52 Cal.3d 266, 270), and it uses the proverbial "stick" to do so: "Accept this offer or you will face additional financial consequences for rejecting it." (*Elrod*, *supra*, 195 Cal.App.3d at p. 699 ["Section 998 achieves its aim by punishing a party who fails to accept a *reasonable* offer from the other party"].) If a section 998 offer has no "reasonable prospect of acceptance," an offeree will reject the offer no matter what and applying section 998's punitive "stick" will do nothing to encourage settlement. (*Elrod,* at p. 699.) Applying the "stick" in such instances would instead encourage litigants to "game the system by making . . . offers they can reasonably expect the [offeree] will refuse," allowing them "to benefit from a no-risk offer made for the sole purpose of later recovering large expert witness fees" and, if they are plaintiffs, prejudgment interest. (*Vick v. DaCorsi* (2003) 110 Cal.App.4th 206, 211; *Jones v. Dumrichob* (1998) 63 Cal.App.4th 1258, 1262-1263; *Elrod*, at p. 699.) The good faith requirement prevents this perversion of section 998. (*Menees v. Andrews* (2004) 122 Cal.App.4th 1540, 1544 ["The courts have uniformly rejected an interpretation of section 998 which would allow offering parties to . . . 'game the system.'"]; *Westamerica Bank v. MBG Industries, Inc.* (2007) 158 Cal.App.4th 109, 129 [same].)

Whether a section 998 offer has a reasonable prospect of acceptance is a function of two considerations, both to be evaluated in light of the circumstances "at the time of the offer"

and "not by virtue of hindsight." (*Burch v. Children's Hospital of Orange County Thrift Stores, Inc.* (2003) 109 Cal.App.4th 537, 548; *Fortman v. Hemco* (1989) 211 Cal.App.3d 241, 264; *Elrod, supra,* 195 Cal.App.3d at p. 699.)  First, was the 998 offer within the "range of reasonably possible results" at trial, considering all of the information the offeror knew or reasonably should have known? (*Elrod,* at pp. 699-700.)  Second, did the offeror know that the offeree had sufficient information, based on what the offeree knew or reasonably should have known, to assess whether the "offer [was] a reasonable one," such that the offeree had a "fair opportunity to intelligently evaluate the offer"?  (*Id.* at p. 699; *Najera, supra,* 191 Cal.App.4th at p. 878.)  These two considerations assess whether the offeror knew that the 998 offer was reasonable, first, from the offeror's perspective and, second, from the offeree's perspective.  In light of this focus on the reasonableness of the *offeror*'s conduct in *making* the 998 offer (which makes sense because the issue is the validity of the offer in the first place), whether the *offeree* acted reasonably in *rejecting* that offer is irrelevant.  (*Arno, supra,* 130 Cal.App.4th at p. 1027; *People ex rel. Lockyer v. Freemont General Corp., Inc.* (2001) 89 Cal.App.4th 1260, 1270-1271.)

In assessing whether the 998 offeror knew that the offeree had sufficient information to evaluate the offer (the second consideration), the offeree needs information bearing on the issue of liability as well as on the amount of damages because these are the issues upon which a verdict would rest and because the 998 offer, if accepted, would be in lieu of that verdict.  (*Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 135 (*Nelson*) [liability relevant]; *Barba v. Perez* (2008) 166 Cal.App.4th 444, 450-451 (*Barba*) [damages relevant]; see generally *Aynes v. Winans* (1948)

8

33 Cal.2d 206, 211 (dis. opn. of Carter, J.) ["The *essential issues* for the jury [are] liability and amount of damages . . ."].) In assessing the information available to the offeree, courts are to look to all of the relevant circumstances. (*Arno*, *supra*, 130 Cal.App.4th at p. 1026.) The pertinent cases have nevertheless identified a number of specific circumstances to be examined.

First, how far into the litigation was the 998 offer made? Although section 998 fixes no "*minimum* period that must elapse following commencement of suit for service of a valid 998 offer" (*Barba*, *supra*, 166 Cal.App.4th at p. 452),[5] a litigant receiving a 998 offer at the time a lawsuit is filed or soon thereafter is, as a general matter, less likely to have sufficient information upon which to evaluate that offer. (E.g., *Najera*, *supra*, 191 Cal.App.4th at p. 875 [receiving offer at same time complaint is served]; cf. *Whatley-Miller v. Cooper* (2013) 212 Cal.App.4th 1103, 1113 (*Whatley-Miller*) [receiving offer two months after complaint was served].)

Second, what information bearing on the reasonableness of the 998 offer was available to the offeree prior to the offer's expiration? Information may be obtained (1) by virtue of prior litigation between the parties (*Bender v. City of Los Angeles* (2013) 217 Cal.App.4th 968, 989 [civil lawsuit against police followed criminal prosecution of plaintiff resulting in acquittal]); (2) through pre-litigation exchanges between the parties (*Barba*, *supra*, 166 Cal.App.4th at pp. 450-451 [pre-litigation letter

---

[5] For this reason, we decline Cedars's invitation to erect either a rule or a presumption that any 998 offer in a malpractice lawsuit is invalid if not served at least 90 days after a pre-litigation demand pursuant to section 364 or, absent such a demand, at least 90 days after the complaint was served.

explaining offeror's medical expenses]; *Aguilar v. Gostischef* (2013) 220 Cal.App.4th 475, 482 [same]); (3) through post-complaint discovery in the case (*Whatley-Miller*, *supra*, 212 Cal.App.4th at p. 1113); or (4) by virtue of a pre-existing relationship between the parties that yields a "free flow of information" (*Barba*, *supra*, 166 Cal.App.4th at p. 450 [parties had "close, semi-familial relationship"]).

Third, did the party receiving the 998 offer alert the offeror that it lacked sufficient information to evaluate the offer and, if so, how did the offeror respond?  An offeree may alert the offeror by (1) requesting discovery, either formally or informally (*Barba*, *supra*, 166 Cal.App.4th at pp. 450-451); (2) asking for an extension of the 998 offer's deadline (cf. *Whatley-Miller*, *supra*, 212 Cal.App.4th at p. 1107, 1114); or (3) otherwise objecting to the offer (*Najera*, *supra*, 191 Cal.App.4th at p. 875).  If, after hearing the offeree's concerns, the offeror's response is less than forthcoming, "such obstinacy" is "potent evidence that [the] offer was neither reasonable nor made in good faith." (*Barba, supra,* 166 Cal.App.4th at p. 451; *Najera, supra,* 191 Cal.App.4th at p. 878.)

Although the party making a 998 offer generally has the burden of showing that her offer is valid (*Timed Out*, *supra*, 21 Cal.App.5th at p. 942; *Barella, supra,* 84 Cal.App.4th at p. 799), it is the 998 offeree who bears the burden of showing that an otherwise valid 998 offer was not made in good faith.  (*Elrod*, *supra*, 84 Cal.App.4th at p. 700; *Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 134 (*Nelson*).)

10

## II. The Trial Court Did Not Abuse Its Discretion In Finding That Plaintiff's 998 Offer Was Not Made In Good Faith

### A. *Application of pertinent factors*

Plaintiff's 998 offer to settle for $249,999.99 was undoubtedly within the "range of reasonably possible results" at trial. The jury's $5,594,557 verdict constitutes prima facie evidence of such (*Elrod*, *supra*, 195 Cal.App.3d at p. 700), and Cedars has offered no evidence to the contrary.

Consequently, and as the trial court properly recognized, whether plaintiff's 998 offer in this case was made in good faith turns entirely on the second consideration bearing on good faith—that is, on whether Cedars had sufficient information to assess whether plaintiff's $249,999.99 offer was a reasonable one. The trial court did not abuse its discretion in concluding that Cedars lacked sufficient information. Each of the factors identified in the case law support the trial court's determination.

As to timing, plaintiff made her 998 offer just 19 days after serving Cedars with her complaint and just five days after Cedars filed its answer.

As to the availability of information, Cedars had very little information available to it on the issues of liability and the amount of damages prior to the date plaintiff's 998 offer expired. Plaintiff's three-page complaint was "bare bones," as it listed no specifics as to the injuries she suffered or the amount of damages she sought. Nor was this skeletal complaint fleshed out by the pre-litigation notice required by section 364, which would have set forth the "legal basis of [her] claim and the type of loss sustained, including [the] specific . . . nature of injuries suffered" (§ 364, subds. (a) & (b)), because plaintiff never filed such a

11

notice.[6]  No depositions had been taken.  But Cedars was not entirely bereft of information.  Plaintiff had sent Cedars a letter the day before she made her 998 offer (1) stating that her doctors' negligence was "self-evident" and that her "injuries are well documented and far exceed the" $250,000 cap on noneconomic damages, and (2) attaching photographs of plaintiff before and after the surgery.  Plaintiff also provided some written discovery to Cedars prior to her offer's expiration—namely, (1) she forwarded to Cedars her answers to the general interrogatories propounded by Dr. Carroll, but submitted to the trial court only the cover sheet for those answers and not the answers themselves, and (2) she responded to Cedars's request for documents on the day before her 998 offer expired.  Those responses contained no details on the issues of liability and the amount of damages except (1) to indicate that plaintiff was not making a claim for "lost earnings" and that plaintiff's "earning capacity may be affected as [she] has had to delay starting law school for at least two years," (2) to tell Cedars to contact plaintiff's insurance carrier to obtain her medical bills, and (3) to tell Cedars to look at its own records.  And Cedars also had in its possession plaintiff's 9,662-page medical chart, which included (1) the operation report noting the nicked vein and internal bleeding, and (2) the records indicating her extended stay and care at the hospital.

The trial court did not abuse its discretion in concluding that this information, considered in its totality, did not provide Cedars with sufficient information with which to evaluate the

---

[6]     What is more, plaintiff's attorney misrepresented to the trial court in a sworn affidavit that he *had* filed a section 364 notice after certifying to Cedars that he had not.

reasonableness of plaintiff's section 998 offer.  On the question of liability, this information did not indicate which doctor (Dr. Gupta or Dr. Carroll) was responsible for any negligence or the extent to which plaintiff's injuries were related to or exacerbated by any pre-existing medical conditions she might have.  On the question of the amount of damages, this information did not speak at all to plaintiff's pain and suffering, to the amount of her medical expenses (including any offset due to insurance), or to any possible loss in her earning capacity.  Indeed, plaintiff's response to Cedars's request for documents indicated she was unsure whether she would suffer *any* loss of earning capacity.

As to providing notice of the lack of sufficient information and any response to that notice, Cedars alerted plaintiff to its concern that it was "too soon for it to make any determination as to whether" her 998 offer was reasonable, and plaintiff never responded.

Plaintiff responds that Cedars had sufficient information to evaluate her section 998 offer.

As a threshold matter, she argues that any absence of information regarding her *economic* damages is of no consequence because her 998 offer was an offer only to settle the *noneconomic* damages portion of her case for $249,999.99, which is just below the statutory cap for noneconomic damages in medical malpractice cases.  We reject this argument because it contradicts the plain language of the 998 offer itself, which offers to "allow judgment to be taken against [Cedars] . . . in the amount of $249,999.99" without any hint that the offer would settle only part of the case.  Even if we were to accept plaintiff's invitation to retroactively rewrite her 998 offer, Cedars still lacked sufficient information to make an intelligent

13

determination as to a reasonable amount of noneconomic damages for the reasons described above. What is more, plaintiff's conduct in making an offer as to noneconomic damages that, in her counsel's own words, was "one penny below" the statutory cap for such damages mere weeks after serving Cedars raises more than a specter of gamesmanship, which, as noted above, is antithetical to the legitimate operation of section 998.

Even if we reject her retroactively narrowed reading of her 998 offer, plaintiff continues, Cedars still had enough information to evaluate a global settlement offer because (1) Cedars had access to her 9,662-page medical chart, (2) Cedars conducted a peer review of the operation that provided greater information, (3) Cedars had the answers to Dr. Carroll's form interrogatories, and (4) any shortfall of information regarding damages could not in any event invalidate her 998 offer because Cedars's objection never used the word "damages."

However, none of these sources provided Cedars with sufficient information to evaluate plaintiff's offer.

Plaintiff's medical chart, as noted above, supplied some information regarding liability. But it left several issues unaddressed, including plaintiff's loss of earning capacity and her pain and suffering.

Plaintiff provided no evidence that Cedars ever conducted a peer review regarding the operation. All she offers is her counsel's assertion that "of course" Cedars did.[7]

We cannot evaluate whether plaintiff's answers to Dr. Carroll's form interrogatories provided Cedars with sufficient

_____

[7] Thus, the parties' debate regarding the applicability of Evidence Code section 1157, the evidentiary privilege applicable to such peer reviews, is irrelevant.

14

information because those answers were never made part of the record in this case.  Plaintiff asserts that she tried to make them a part of the record and that the trial court was wrong to deny her request to supplement her briefing with the interrogatory answers.  Plaintiff's request to supplement was, in effect, a motion to amend her pleading; as such, it was governed by section 473, subdivision (b).  (*Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674, 683-684 [request to supplement pleading so governed]; *Puppo v. Larosa* (1924) 194 Cal. 721, 724 [same, as to motion to tax costs].)  The discretionary relief portion of this statute applicable here only permits a trial court to allow an amendment necessitated by an attorney's mistake or inadvertence if it is an error that "'anyone could have made'"; put differently, errors due to an attorney's failure to "meet the professional standard of care, such as failure . . . to properly advance an argument" provide no basis to amend.  (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 258.)  In this case, plaintiff's attorney told the trial court that he "didn't see [the actual discovery responses forwarded to Cedars] as necessary," and this statement confirms that the attorney's decision to include the cover letter accompanying the responses but to omit the responses themselves was strategic and tactical rather than a mistake any layperson could have made.

Plaintiff's criticism of Cedars's objection lacks merit because the plain language of that document registered a general objection to the timing of plaintiff's 998 offer that applied with equal force to the issues of liability and to the amount of damages.  Cedars's purported failure to use the words "liability" or "damages" did not somehow narrow the scope of its otherwise inclusive objection.

15

### B.     *Plaintiff's further arguments*

Plaintiff makes what boils down to three further categories of arguments for reversal.

She contends that Cedars effectively waived any right to object to the lack of information because it never asked her to extend the deadline of her section 998 offer.  We reject this contention.  Although a request for a continuance is *one* method by which a section 998 offeree may put the offeror on notice that it lacks sufficient information to evaluate the offer, it is not the *only* method of doing so; Cedars's objection sufficed.

She asserts that the trial court erred in refusing to consider evidence that (1) Cedars's attorney had a practice of making "boilerplate prematur[ity] claim[s]" to section 998 offers in other cases, and (2) Cedars would have rejected plaintiff's 998 offer even if Cedars had possessed sufficient information to evaluate it.  We reject each assertion.  Cedars's position regarding the timing of section 998 offers in other cases (and, relatedly, whether plaintiff was electing to disregard Cedars's objection in this case in light of its position in the other cases) is neither here nor there because whether a party's 998 offer is made in good faith turns on the particular circumstances of each case.  (*Arno*, *supra*, 130 Cal.App.4th at p. 1024.)  Further, what Cedars might or might not have done had plaintiff's offer been valid does not affect whether the offer was valid in the first place; here, it was not.

And plaintiff posits that the trial court impermissibly required her to prove her good faith rather than requiring Cedars to prove its absence.  As noted above, the law squarely places the burden on Cedars.  (E.g., *Elrod*, *supra*, 84 Cal.App.4th at p. 700.)  However, plaintiff's position that the trial court shifted that burden is not supported by the record.  At no point did the trial

court indicate that the burden rested with plaintiff, and the questions the court posed to plaintiff during the hearing sought plaintiff's input on how to refute the points Cedars had already made in support of its motion.

## DISPOSITION

The order striking plaintiff's request for prejudgment interest is affirmed.  Cedars is entitled to its costs on appeal.

## CERTIFIED FOR PUBLICATION.


_____, J.
HOFFSTADT

We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
CHAVEZ

17