Filed 12/14/21  18131 Ventura Blvd v. 5223 Lindley CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| 18131 VENTURA BLVD, LLC et al., | B307958 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. LC106325) |
| v. | |
| 5223 LINDLEY, LLC, | |
| Defendant and Appellant. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Shirley K. Watkins, Judge.  Affirmed.

Law Office of Matthew Shayefar and Matthew Shayefar for Plaintiffs and Respondents.

Anderson, McPharlin & Conners and William R. Larr for Defendant and Appellant.

————————————————

5223 Lindley, LLC (Lindley) appeals the postjudgment order granting in part the motion to tax costs filed by 18131 Ventura Blvd, LLC and Ventana Medical Center, LP (collectively Ventura).  Lindley contends the court erred in finding Lindley's Code of Civil Procedure section 998[1] settlement offer was not reasonable and in denying recovery of Lindley's expert witness costs as a result.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Ventura's Complaint*

As set forth in more detail in our prior opinion affirming the judgment in favor of Lindley (*18131 Ventura Blvd, LLC v. 5223 Lindley, LLC* (Sept. 21, 2021, B304458) [nonpub. opn.] (*18131 Ventura Blvd, LLC I*)), this dispute concerns two parcels of commercial real estate:  18131 Ventura Boulevard (the Ventura property) and the adjoining property to the east, 5223 Lindley Avenue (the Lindley property).  In 1989 the prior owners of the Lindley property executed an easement granting the prior owner of the Ventura property "an exclusive perpetual easement and right of way for . . . one or more underground utility lines."  (*18131 Ventura Blvd, LLC I*, at p. 2.)

In 2017 Ventura sued Lindley for wrongful interference with an easement and nuisance after discovering utility lines servicing the Lindley property located in the easement area above Ventura's utility lines.  Ventura argued Lindley's use of the easement area was prohibited by the plain language of the easement and constituted unreasonable interference with Ventura's use of the easement.  Because of Lindley's refusal to

---

[1]     Statutory references are to this code.

2

move its utility lines, Ventura had been unable to install a gravity-fed drainage system and instead had to install a more expensive pump-fed system above Lindley's utility lines. The complaint sought compensatory damages of at least $600,000, representing the increased costs of the pump-fed system, plus the diminution in value of the property resulting from having a pump-fed drainage system.

2. *Denial of Summary Judgment and Lindley's Section 998 Offer*

In March 2019 the trial court denied Lindley's motion for summary judgment or, in the alternative, summary adjudication. The court stated the grant of an "exclusive" easement appeared to prevent Lindley from using the easement area for its utilities. However, the court noted that the undisputed facts demonstrated Lindley's predecessor had placed its utility lines in the easement area prior to executing the easement. Accordingly, the court stated, "[T]here is a colorable argument that the intent of the Defendant's predecessors in interest [was] to not grant an 'exclusive' use of the easement. However, determining the intent of the parties would necessarily require a weighing of these contradictory facts (*i.e.*: express language of the grant of easement vs. the reality of the placement of the two parties' utilities). This is an issue for the fact finder."

Two weeks after denial of its summary judgment motion Lindley served on Ventura, pursuant to section 998, an offer to compromise by payment of $10,000. Ventura did not accept the offer.

3. *Judgment and Appeal*

In November 2019, after a nine-day bench trial, the court issued a statement of decision, finding the term "exclusive

perpetual easement" as used was ambiguous, the grantor and grantee had intended to allow the Lindley property to use the easement area for its utilities, and Lindley had not unreasonably interfered with Ventura's use of the easement. Judgment was entered in favor of Lindley on December 27, 2019. We affirmed the judgment on appeal.

### 4. *The Postjudgment Award of Costs*

Following entry of judgment Lindley submitted a memorandum of costs totaling $84,126.95, which included $28,250.22 for expert witness fees. Ventura moved to tax costs, arguing, in part, Lindley was not entitled to expert costs pursuant to section 998 because Lindley's settlement offer was not made in good faith. On September 4, 2020 the trial court granted the motion to tax costs as to the expert witness fees, stating, "The court agrees that viewing the case at the time the [section] 998 offer was made, that given the dispute and complicated/factual and legal issues, the offer was not reasonable at the time it was made and the defendant should have had no reasonable expectation that it would be accepted." After taxing costs for other items not at issue here, the court awarded Lindley costs of $45,492.97.

## DISCUSSION

### 1. *Governing Law and Standard of Review*

Ordinarily expert witness fees are not recoverable as costs in a civil action unless the expert was ordered by the court. (See § 1033.5, subd. (b)(1).) Nonetheless, because Ventura failed to receive a judgment more favorable than Lindley's $10,000 offer to compromise pursuant to section 998, the court, "in its discretion," was authorized to require Ventura to pay Lindley's reasonable

4

costs of trial, including expert witness fees incurred after the offer was made.  (§ 998, subd. (c)(1).)[2]

Section 998 "is designed to encourage the settlement of lawsuits before trial."  (*Regency Outdoor Advertising, Inc. v. City of Los Angeles* (2006) 39 Cal.4th 507, 528.)  "'Its effect is to punish the plaintiff who fails to accept a reasonable offer from a defendant.'"  (*Najah v. Scottsdale Ins. Co.* (2014) 230 Cal.App.4th 125, 143.)  "[T]o accomplish the legislative purpose of encouraging settlement of litigation without trial [citation], a good faith requirement must be read into section 998."  (*Wear v. Calderon* (1981) 121 Cal.App.3d 818, 821 (*Wear*); accord, *Licudine v. Cedars-Sinai Medical Center* (2019) 30 Cal.App.5th 918, 924 (*Licudine*) ["[a] 998 offer is valid only if it is made in 'good faith'"]; *Najah*, at p. 143 [same]; see also *Regency Outdoor Advertising, Inc.*, at p. 531 ["[a]ssuming without deciding" section 998 entails a good faith requirement].)

A section 998 offer "is made in good faith only if the offer is "'realistically reasonable under the circumstances of the particular case'" [citations]—that is, if the offer 'carr[ies] with it

---

[2]     Section 998, subdivision (c)(1), states:  "If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer.  In addition, in any action or proceeding other than an eminent domain action, the court or arbitrator, in its discretion, may require the plaintiff to pay a reasonable sum to cover postoffer costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the defendant."

some reasonable prospect of acceptance.""" (*Licudine, supra,* 30 Cal.App.5th at p. 924.) "[A] party having no expectation that his [or her] offer will be accepted 'will not be allowed to benefit from a no-risk offer made for the sole purpose of later recovering large expert witness fees.'" (*Adams v. Ford Motor Co.* (2011) 199 Cal.App.4th 1475, 1483; see *Licudine*, at p. 924 ["[t]he good faith requirement prevents this perversion of section 998"].)

The determination whether an offer was reasonable and made in good faith "turns on the particular circumstances of each case." (*Licudine, supra,* 30 Cal.App.5th at p. 930.) Courts generally consider two factors: First, whether the offer was "within the 'range of reasonable possible results' at trial, considering all of the information the offeror knew or reasonably should have known." (*Id.* at pp. 924-925; accord, *Adams v. Ford Motor Co.*, *supra,* 199 Cal.App.4th at pp. 1485-1486 ["Ford's offer could not be evaluated simply in comparison to the judgment Adams sought, but it should have been measured in light of the likelihood that Adams would prevail at trial"].) Second, "whether [the offeror's] information was known or reasonably should have been known to [the offeree]" such that the offeree had "information necessary to evaluate the offer." (*Elrod v. Oregon Cummins Diesel, Inc.* (1987) 195 Cal.App.3d 692, 699-700; accord, *Najera v. Huerta* (2011) 191 Cal.App.4th 872, 878 [offeree must have "a fair opportunity to intelligently evaluate the offer"].)

"Whether a section 998 offer was reasonable and made in good faith is left to the sound discretion of the trial court. [Citation.] 'Similarly, the decision to award expert witness fees, and the determination of whether these fees were reasonably necessary, are issues left to the discretion of the trial court.' [Citation.] The trial court, having heard the entire case and

observed the expert witnesses' testimony, is in a far better position than an appellate court to exercise this discretion and determine what fees were reasonably necessary.  [Citation.] Thus, an appellate court ordinarily should reverse the trial court's determination only if it finds 'in light of all the evidence viewed most favorably in support of the trial court, no judge could have reasonably reached a similar result.'" (*LAOSD Asbestos Cases* (2018) 25 Cal.App.5th 1116, 1126; see also *Regency Outdoor Advertising, Inc. v. City of Los Angeles, supra,* 39 Cal.4th at p. 531 [applying abuse of discretion standard to award of fees and costs].)

2. *The Trial Court Did Not Abuse Its Discretion in Refusing To Award Expert Fees to Lindley*

Lindley concedes its section 998 settlement offer was "modest in amount," representing only 1.6 percent of the total damages sought in the complaint.  Nonetheless, Lindley argues the offer was reasonable because "there was never any practical possibility [Ventura] would prevail on the liability issue in this action."  While Lindley is correct a modest offer may be reasonable if there is no likelihood the offeree will prevail at trial (see *Bates v. Presbyterian Intercommunity Hospital, Inc.* (2012) 204 Cal.App.4th 210, 220 ["'[e]ven a modest or "token" offer may be reasonable if an action is completely lacking in merit'"]), we cannot say such was the case here.

Only two weeks prior to the settlement offer the trial court denied summary judgment based on its assessment that issues of fact needed to be decided, including the parties' intent at the time the easement was granted.  The court recognized Lindley had made a "colorable" argument for its interpretation of the easement, but that is hardly equivalent to a finding Ventura's

claims were completely lacking in merit. Lindley has not presented any evidence of a change in circumstances between the time of the summary judgment ruling and its offer that would suggest it was "absolutely clear that no reasonable possibility exists that the defendant will be held liable." (*Wear*, *supra*, 121 Cal.App.3d at p. 821.)

Lindley's arguments to the contrary are not persuasive. Lindley contends that, at the time of the offer, Ventura was aware "there was no possibility [the grantors] intended" to grant an easement excluding their own use and "all parties to the Easement only intended it to allow [the grantee] to continue to use its pre-existing drain line." However, testimony of only one of three grantors had been submitted in support of the summary judgment motion; and it appears the grantee's attorney, who had drafted the easement language, had not yet been deposed at the time of the summary judgment ruling. Given that the trial court had not reviewed testimony from these individuals, let alone assessed their credibility, the trial court acted well within its discretion when it concluded that, at the time of the offer, Lindley could not have reasonably expected Ventura would accept its offer. (See *Wear*, *supra*, 121 Cal.App.3d at p. 821 ["if there is some reasonable possibility, however slight, that a particular defendant will be held liable, there is practically no chance that a plaintiff will accept a token or nominal offer of settlement from that defendant"]; see also *Essex Ins. Co. v. Heck* (2010) 186 Cal.App.4th 1513, 1528 ["[a] token or nominal offer made with no reasonable prospect of acceptance will not pass the good faith test"].)

## DISPOSITION

The postjudgment order is affirmed.  The parties are to bear their own costs on appeal.


                                                  PERLUSS, P. J.


We concur:


SEGAL, J.


IBARRA, J.[*]

---

[*]     Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.