Filed 11/20/25  Lazarov v. Shaulov CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ALBENA IVANOVA HRISTOVA LAZAROV et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> VITALIY SHAULOV, M.D., <br><br> Defendant and Respondent. | G064739 <br><br> (Super. Ct. No. 30-2019-01118784) <br><br> O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Thomas S. McConville, Judge. Affirmed. Request for judicial notice. Denied.

Patricia A. Law & Associates and Patricia A. Law for Plaintiffs and Appellants.

Walker Law Group, Jeffrey A. Walker and Laura L. Hummasti for Defendant and Respondent.

*          *          *

On October 9, 2018, Maxim Z. Lazarov, a husband and father, killed himself. The tragic suicide took place hours after he was discharged from the hospital where he was receiving psychiatric treatment after having attempted suicide only one week prior.

Lazarov's widow and son filed a professional negligence complaint against the medical professionals involved in Lazarov's care leading up to his suicide. Among the defendants was Lazarov's outpatient psychiatrist, Vitaliy Shaulov, M.D. The complaint alleged Dr. Shaulov "profound[ly]" mismanaged Lazarov's medications in the months leading up to his suicide attempt. The complaint further alleged Dr. Shaulov's substandard care and treatment of Lazarov was part of the cause of his initial suicide attempt, hospitalization, and eventual suicide, even though other doctors treated Lazarov during his hospitalization.

Dr. Shaulov made offers to compromise under Code of Civil Procedure section 998 (section 998) four months after filing his answer to the complaint. The offers specified that both sides should agree to bear their own respective attorney fees and costs in exchange for a dismissal of the case. Plaintiffs rejected the offers as unreasonable.

All defendants, except for Dr. Shaulov, had settled out of the case by the time of trial in 2024. The jury found Dr. Shaulov had not been negligent in his care of Lazarov. The trial court thereafter awarded Dr. Shaulov his costs, including expert witness fees pursuant to section 998.

Plaintiffs argue Dr. Shaulov's section 998 offers were not made in good faith, considering the circumstances of the case, his potential exposure,

2

and the stage of litigation during which they were served. We conclude plaintiffs failed to make the necessary showing of the unreasonableness of the offers under section 998, and therefore, the trial court did not abuse its discretion in denying the posttrial motion to strike or tax the expert costs.

STATEMENT OF FACTS

In March 2018, Lazarov presented to the hospital for the first time with suicidal thoughts. He was diagnosed with depression and hospitalized for one week.

Dr. Shaulov began treating Lazarov in late May 2018 for anxiety and depression.[1] Before May, Lazarov had seen another psychiatrist who had prescribed him numerous medications, including Cymbalta, Clonazepam, and Trazodone. Dr. Shaulov opted to continue these medications and added a prescription for Neurontin.

Over the course of 10 subsequent visits between June 11 and September 25, 2018, Lazarov reported experiencing persistent and worsening anxiety, feelings of general unwellness, and dread. At each of these visits, Dr. Shaulov adjusted Lazarov's existing medications, added new medications, or did both.

On June 11, 2018, Dr. Shaulov discontinued the Neurontin prescription and added Rexulti. On June 25, he discontinued the Rexulti and increased the Cymbalta dosage. On July 11, he added Effexor and

---

[1] We have gleaned many of the facts pertinent to Lazarov's medical condition and treatment from the declaration submitted to the court by Dr. Shaulov's psychiatric expert, Stephen M. Stahl, M.D., Ph.D., in opposition to plaintiffs' motion to strike or tax costs. Dr. Stahl averred he had reviewed Lazarov's medical records to render his opinion at trial. No declaration from plaintiffs' psychiatric expert appears in the appellate record.

Fludrocortisone. When Lazarov reported he had seen no improvement from the new medication, on July 17, Dr. Shaulov increased his Effexor dosage. On July 25, he added Abilify to Lazarov's regimen.

On July 31, Lazarov told Dr. Shaulov that his symptoms were getting worse and he wished to taper off his use of antidepressants. Dr. Shaulov decreased Lazarov's Effexor dose, discontinued the Abilify (which Lazarov had not yet begun to take), and added Lunesta.

Lazarov's nervousness increased as he began to taper off the antidepressants. On August 6, Dr. Shaulov prescribed Propranolol and Lithium Orotate for anxiety, and iodine to slow down Lazarov's thyroid.

At his August 16 visit, Lazarov reported that he had unilaterally taken himself off Effexor and Cymbalta and was experiencing constant obsessive thoughts. Dr. Shaulov prescribed Abilify and Benadryl. After Lazarov's anxiety increased, Dr. Shaulov discontinued Abilify on September 12 and increased the Clonazepam dosage.

Lazarov's last appointment with Dr. Shaulov was on September 25, 2018. There was no change in his condition. Dr. Shaulov added Latuda to the medication regimen. He never saw Lazarov again.

One week later, on October 2, 2018, Lazarov presented to the emergency department at Mission Hospital Regional Medical Center in Mission Viejo. He was in crisis and had attempted suicide. He was hospitalized under the care of a different set of doctors and then discharged on October 9. Dr. Shaulov was not consulted on Lazarov's treatment during this period. Lazarov killed himself the day he was released.

PROCEDURAL HISTORY

On December 17, 2019, Lazarov's widow, Albena Lazarov, and son, Maxim Lazarov, Jr. (plaintiffs), filed their lawsuit. Dr. Shaulov filed his

4

answer to the complaint in March 2020. In July 2020, four and a half months later, Dr. Shaulov's counsel served section 998 offers on plaintiffs. The terms of the offers were: dismissal with prejudice of all claims by plaintiffs; execution of a general release by plaintiffs in favor of Dr. Shaulov; and the parties would bear their own costs and attorney fees.

Plaintiffs served objections to the section 998 offers on August 6, 2020. Citing *Wear v. Calderon* (1981) 121 Cal.App.3d 818, 821 (*Wear*), the objections stated the offers were "not realistically reasonable under the circumstances of the case" and they had "no chance of being accepted." The objections did not alert Dr. Shaulov that plaintiffs lacked sufficient information to evaluate the offers.

At the time the offers were served, plaintiffs had served discovery responses showing they were claiming over $168,000 in annual lost income from Lazarov's death. No depositions had yet been taken, although plaintiffs had noticed Dr. Shaulov's deposition for June and then again for August.[2] His deposition finally took place in September 2020, after the offers had expired.

Dr. Shaulov filed a motion for summary judgment two weeks before service of his 998 offers. The trial court ultimately denied the motion because the declaration provided by plaintiffs' expert created a triable issue of material fact as to whether Dr. Shaulov complied with the applicable standard of care or contributed to plaintiffs' damages.

The jury trial was originally scheduled for September 2021, but trial did not actually commence until January 3, 2024. By a vote of 10 to 2,

---

[2] Plaintiffs ask us to take judicial notice of the closure orders issued by the Governor and state and county public health officials during the COVID-19 pandemic. As these documents do not affect the outcome of this appeal, we deny the request for judicial notice.

the jury found Dr. Shaulov was not negligent in his care or treatment of Lazarov.

After trial, Dr. Shaulov filed a memorandum of costs, seeking in excess of $90,000, including $62,644 in expert witness fees. Plaintiffs filed a motion to strike and tax costs, challenging portions of the memorandum of costs. They argued expert witness fees could not be recovered because little discovery had taken place when the offers were served, and the offer to waive costs was not reasonable.

The trial court denied the motion to strike and tax costs and awarded Dr. Shaulov costs in the total amount of $90,325.05, including the full amount sought in expert fees.

Plaintiffs filed a timely notice of appeal.

DISCUSSION

I.

STANDARD OF REVIEW

Plaintiffs argue the award of expert costs under section 998 was improper. "'Whether a section 998 offer was reasonable and made in good faith is left to the sound discretion of the trial court.' [Citation.] 'In reviewing an award of costs and fees under Code of Civil Procedure section 998, the appellate court will examine the circumstances of the case to determine if the trial court abused its discretion in evaluating the reasonableness of the offer or its refusal.' [Citation.] "'[']The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power.' [Citations.]'" [Citation.]" (*Clark v. Optical Coating Laboratory, Inc.* (2008) 165 Cal.App.4th 150, 185–186.)

6

## II.

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN FINDING THE SECTION 998 OFFERS WERE REASONABLE AND MADE IN GOOD FAITH

Under section 998, any party may make an offer to compromise and settle the litigation, so long as the offer is made no later than 10 days prior to trial. (*Id.*, subd. (b).) When the defendant makes the offer, and the plaintiff does not accept and later "fails to obtain a more favorable judgment or award, the plaintiff shall not recover their postoffer costs and shall pay the defendant's costs from the time of the offer. In addition, . . . the court or arbitrator, *in its discretion, may require the plaintiff to pay a reasonable sum to cover postoffer costs of the services of expert witnesses*, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the defendant." (*Id.*, subd. (c)(1), italics added.)

"[I]n order to accomplish the legislative purpose of encouraging settlement of litigation without trial [citation], a good faith requirement must be read into section 998. In other words, the pretrial offer of settlement required under section 998 must be realistically reasonable under the circumstances of the particular case. Normally, therefore, a token or nominal offer will not satisfy this good faith requirement." (*Wear, supra,* 121 Cal.App.3d at p. 821.) However, "even a 'modest settlement offer' may be in good faith if it is believed the defendant has a significant likelihood of prevailing at trial." (*Jones v. Dumrichob* (1998) 63 Cal.App.4th 1258, 1264.)

To be considered realistically reasonable under the circumstances of the case, the offer must have """some reasonable prospect of acceptance.""" (*Licudine v. Cedars-Sinai Medical Center* (2019) 30 Cal.App.5th 918, 924.) "Whether the offer is reasonable 'depends upon the information available to

7

the parties as of the date the offer was served.' [Citation.]" (*Whatley-Miller v. Cooper* (2013) 212 Cal.App.4th 1103, 1112.) If the party receiving the section 998 offer lacks sufficient information to evaluate the offer, that party must bring the lack of information to the attention of the party making the offer. (*Licudine, supra*, at p. 926.) The actual result at trial "constitutes prima facie evidence that the offer was reasonable." (*Jones v. Dumrichob, supra*, 63 Cal.App.4th at p. 1264.)

In this case, plaintiffs' objections to the section 998 offers did not state they lacked sufficient information to evaluate the offers. The motion to strike and tax costs did not provide the trial court with the information available to the parties when the offers were served. Counsel's declaration in support of the motion attached deposition notices and face pages from deposition transcripts and settlement briefs and suggested no depositions had been taken when the offer was served. Plaintiffs' motion did not describe their efforts to propound discovery (other than Dr. Shaulov's deposition), explain what information would have been necessary to reasonably review the section 998 offers, or describe what discovery needed to be conducted to obtain that information.[3]

The trial court found this was insufficient to meet plaintiffs' burden: "When I reference whether there was evidence of discovery, there are other discovery tools other than depositions; right? There's written discovery, and I don't know what the status was of the written discovery at that time

---

[3] The documents in support of and in opposition to the motion for summary judgment might have given an idea of the state of discovery when the section 998 offers were made, since the section 998 offers were essentially contemporaneous with the motion for summary judgment. However, these documents are not part of the appellate record.

because there's no evidence of what it was at that time as to whether information had been provided either from the plaintiff to demonstrate what the plaintiff says that plaintiffs' damages were at that time or whether the defendant had issued denials of whatever the discovery may have been that was in writing. I don't know that. I don't have that evidence in front of me. [¶] And so it's hard for me to make a finding that you have carried your burden of proof when I don't know the answers to those questions."[4]

Given the deficient showing in the motion to strike and tax costs, the failure by plaintiffs to alert Dr. Shaulov that they needed more information to evaluate the section 998 offers, and the complete defense verdict at trial, we conclude the trial court did not err in denying the plaintiffs' motion.

We do not suggest that, as a matter of law, the only conceivably reasonable value of plaintiffs' case at the time of the section 998 offers was zero dollars plus costs—ultimately more than $90,000. It is possible plaintiffs' claim was more robust than that. Dr. Shaulov served his offers four months after he appeared in the case, and four years before trial. At the time he served them, there were multiple defendants. Even if Dr. Shaulov had not treated Lazarov in the hospital, he did not dispute he was Lazarov's treating psychiatrist in the months leading up to his death, and he was responsible for managing Lazarov's psychiatric medications during that time. Based on Dr. Stahl's review of the medical records, it appears the medication regimen

---

[4] Plaintiffs' counsel offered to supplement her exhibits with evidence of written discovery, but the trial court declined to accept it: "Today is the day of the motion; right? I mean today is the day for the hearing. So that's why I'm doing it now." Plaintiffs do not challenge the trial court's refusal to allow supplementation.

was in a state of flux for months before Lazarov's hospitalization. New medications were being introduced; existing ones were being discontinued or their dosages adjusted. And the lack of depositions—while insufficient to paint the full picture of discovery at the time—is not insignificant. That said, on this record, the trial court did not abuse its discretion by finding the offer was reasonable.

## DISPOSITION

The postjudgment order awarding costs to defendant and respondent is affirmed. In the interests of justice, the parties are to bear their own costs on appeal. (See Cal. Rules of Court, rule 8.278(a)(5).)




BANCROFT, J.*

WE CONCUR:


SANCHEZ, ACTING P. J.


SCOTT, J.

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.